## TOLEDO & INDIANA TRACTION COMPANY ET AL.
## *v.* TOLEDO & CHICAGO INTERURBAN
## RAILWAY COMPANY.

[No. 21,046. Filed November 24, 1908.]

1. EMINENT DOMAIN.—*Petition.—Answer.—Exceptions.*—In an eminent domain proceeding where the objections filed to the petition serve the purpose of a demurrer, or present an issue of fact, and such objections are overruled, the defendant to present any question on appeal, must except to such rulings. p. 221.

2. SAME.—*Objections to Petition.—Demurrer.*—Plaintiff in an eminent domain proceeding may demur to defendant's objections to the petition and thus question their sufficiency. Montgomery, J., dissents. p. 223.

3. SAME.—*Procedure.—Civil Code.*—The civil code of procedure applies to proceedings in eminent domain, where no other procedure is prescribed. p. 223.

4. PLEADING.—*Motions to Strike Out.—Demurrer.—Appeal.*—A motion to strike out is not designed to perform the office of a

Toledo, etc., Traction Co. *v.* Toledo, etc., R. Co.—171 Ind. 213.

demurrer; but where such motion in an eminent domain case was considered by the trial court as a demurrer, the Supreme Court may so consider it on appeal. p. 223.

5. STREET RAILROADS. — *Location.* — *When Perfected.*—*Condemning Lands Already Appropriated.*—Where promoters purchased lands taking the title to themselves, as trustees, but naming no *cestui que trust*, such title being conditioned upon the construction of a street railroad upon such land within eighteen months, and a street railroad company subsequently filed its action to appropriate the same lands for its right of way, the fact that such promoters subsequently to the filing of such action organized a street railroad company and conveyed such lands to it does not defeat the right of the prior company to the lands in question. p. 224.

6. CONTRACTS.—*Conveyances.*—*Parties.*—*Promoters.*—*Corporations.*—Corporations subsequently organized are not obligated to a contract entered into between their promoters and the landowners conveying lands to such promoters for the purpose of the location and construction of a street railroad. p. 233.

7. SAME.—*Ratification by Subsequently Organized Corporation.*—*Time to Which Ratification Relates.*—A corporation's ratification of a contract entered into, for its benefit, by its promoters, cannot relate to a time prior to its corporate existence. p. 234.

From Dekalb Circuit Court; *Emmett A. Bratton,* Judge.

Action by the Toledo & Chicago Interurban Railway Company against the Toledo & Indiana Traction Company and others. From an interlocutory judgment for plaintiff, defendants appeal. *Affirmed.*

*King & Tracy, D. M. Link, Olds & Niezer* and *W. L. Taylor,* for appellants.

*Zollars & Zollars, Frank L. Welsheimer* and *J. E. & J. H. Rose,* for appellee.

JORDAN, C. J.—The appellant Toledo & Indiana Traction Company and appellee are corporations organized under the laws of the State of Indiana pertaining to the incorporation of street-railway companies. Appellant company was organized January 21, 1907. On January 1, 1907, appellee instituted this proceeding in the Dekalb Circuit Court against certain landowners, by filing a complaint in the office of the clerk of said court and taking the steps required

under sections one and two of an act entitled "An act concerning proceedings in the exercise of eminent domain." Acts 1905, p. 59, §§1, 2, §§929, 930 Burns 1908. The action was commenced to condemn and appropriate for the right of way of appellee's railroad certain lands situated in Dekalb county, Indiana. These lands were described in the complaint. On January 25, 1907, Schuyler C. Schenck, Jacob M. Longnecker, and the Toledo & Indiana Traction Company made application to the court to be made parties defendant in said proceeding, claiming to have and hold an interest or title in and to each of said several tracts and parcels of real estate sought to be condemned by this proceeding. This application the court sustained, and said parties were made defendants. On April 13, 1907, all the parties to the action appeared before the court, and appellee, upon leave, filed an amended complaint, naming therein as defendants, along with others, said Schuyler C. Schenck, Jacob M. Longnecker and the Toledo & Indiana Traction Company, the appellants herein. This amended complaint, among other things, alleged that Schenck and Longnecker, at the time of the commencement of the action, and for a long time prior thereto, were, and ever since said time continuously have been, nonresidents of the State of Indiana; "that whatever interests in or title to any real estate claimed or owned by appellant Toledo & Indiana Traction Company had been acquired by it by conveyance from said Schenck and Longnecker since the commencement of this action; that the Toledo & Indiana Traction Company has not now, and never has had, any officer or agent within the State of Indiana; that said company was not incorporated nor in existence at the time of the commencement of this action, nor was it incorporated until January 21, 1907; that immediately after its incorporation, and when accepting said conveyance from Schenck and Longnecker, it had knowledge that the plaintiff was seeking and intending in this action to appropriate and condemn for its right of way each of the

tracts of land now claimed by said Toledo & Indiana Traction Company.''

To the amended complaint appellants filed ten separate objections against the right of appellee to condemn a part of the lands described in the complaint in which said appellants claimed an interest. Upon the motion of appellee the court struck out all of the objections except the fourth, fifth, seventh, eighth and ninth, and thereupon the case was submitted to the court, upon the complaint and the remaining objections. The principal reasons upon which appellee based its motion to strike out the tenth paragraph of appellants' objections were: (1) that the facts therein stated were not sufficient to constitute a good defense; (2) that the facts stated in said objections were not sufficient to constitute a good objection to the complaint.

On the hearing, the court entered an interlocutory order that appellee was entitled to have the lands, claimed to be owned by appellants, condemned for a right of way, upon the payment of damages, and appointed appraisers to assess the damages. From this interlocutory order appellants prosecute this appeal, and assign as errors that the Dekalb Circuit Court erred in sustaining appellee's motion to strike out appellants' objection number ten, and that the court erred in finding for the plaintiff and entering an interlocutory order appointing appraisers. Appellants found their argument in this appeal upon the alleged error of the court in striking out paragraph ten of their objections. The material facts therein alleged are, in substance, as follows: Prior to October, 1906, defendants Schenck and Longnecker were, and ever since have been, the principal and controlling stockholders of the Toledo & Indiana Traction Company, an Ohio corporation, which owned and operated an electric interurban railway between Toledo and Bryan, in the state of Ohio. Being so interested in, and owning and operating said interurban line, Schenck and Longnecker, about October 1, 1906, acting for themselves and the stockholders of the

Toledo & Indiana Traction Company, decided to extend the line of that company along and adjacent to the right of way of the Lake Shore & Michigan Southern Railway Company from Bryan, Ohio, to the town of Waterloo, Dekalb county, Indiana, a distance of twenty-six miles, said line to be selected, surveyed and purchased by said Schenck and Longnecker. In pursuance of such decision and arrangement said Schenck and Longnecker proceeded to have surveyed and staked out said proposed line from Bryan to Waterloo, in the doing of which they expended $2,500. In furtherance of their decision Schenck and Longnecker proceeded to purchase land along the designated route, to the width of sixty-six feet in most instances, but varying in width at some points, on account of conditions existing. The title to all said right of way was conveyed to said Schenck and Longnecker, as trustees, no beneficiaries being named, they being named in the deed as S. C. Schenck and J. M. Longnecker. For a valuable consideration to be paid by them, they purchased and received conveyances from the following-named codefendants. (Here the names of the persons from whom the land was alleged to have been purchased are given, together with the descriptions of the lands so purchased.) All of said real estate was conveyed to Schenck and Longnecker, as trustees, their successors, heirs and assigns, together with the privileges and appurtenances to the same belonging, to be used only for railroad purposes, and the same was conveyed upon the conditions that the grantees, their successors or assigns, should, within a period of eighteen months from the date of the respective deeds, commence the construction of a railway from Bryan, Ohio, to Waterloo, Indiana, and complete the same within three years from said date, otherwise said conveyances should become null and void and of no effect, and the property granted and conveyed by said deeds should revert to the original grantors. All of said conveyances were made and executed at various dates prior to the commencement of proceedings

by the plaintiff in this behalf, and prior to plaintiff's having determined upon and surveyed the route designated in the amended petition, and subsequently to October 1, 1906. Said Schenck and Longnecker, and their associates, in good faith accepted the conveyances of real estate for railway purposes, with the intention of constructing the line of railway, from the village of Bryan to the town of Waterloo, along and upon said route, and were able to build and construct said railway along said line. Said Schenck and Longnecker, and their associates, proceeded with diligence to purchase and acquire title to all of the right of way along the designated line, and to acquire the real estate hereinbefore described, the same being more than eighty per cent of the mileage of the proposed railway between the towns of Butler and Waterloo, prior to the commencement of this proceeding. In furtherance of their decision, and without any delay whatever, they duly and legally organized, under the laws of the State of Indiana, authorizing the incorporation of street-railways in said State, a corporation for the purpose of building, constructing and operating a street-railway from said state line to and through the town of Butler, and to and through the town of Waterloo, Indiana, which corporation was duly incorporated on January 21, 1907, with an authorized capital stock of $100,000, and is denominated the Toledo & Indiana Traction Company, one of the defendants herein. The plaintiff is seeking to condemn the real estate so owned by Schenck and Longnecker, as trustees, and which was purchased by and conveyed to them for the sole purpose, on behalf of the grantors and grantees, of dedicating the same to public use, by the building and constructing of a street and interurban railway thereon, prior to the commencement of this proceeding, and prior to plaintiff's having surveyed the route over which it seeks to condemn the real estate for the construction of a railway. Thereafter, in furtherance of said decision and determination, and after

the incorporation of the Toledo & Indiana Traction Company, defendants Schenck and Longnecker, as trustees aforesaid, for a valuable consideration, conveyed all of the real estate, hereinbefore described, to their codefendant the Toledo & Indiana Traction Company, which is now the owner of the real estate so sought to be condemned, which corporation was organized for the express purpose of carrying out the objects and purposes of Schenck and Longnecker, and their associates, and constructing said electric railway over and along the line so selected and designated by them, and over and along the real estate hereinbefore described. Immediately after receiving the conveyance of said real estate from Schenck and Longnecker, as trustees, the Toledo & Indiana Traction Company adopted the right of way so staked out and determined upon by Schenck and Longnecker, who had promoted and organized the corporation and taken the real estate in their own names, to be transferred and conveyed to the corporation when organized, and accepted all the benefits and all the liabilities under and by virtue of said deeds, and fully ratified and confirmed the acts of Schenck and Longnecker in laying out and purchasing the right of way as aforesaid, and determined to construct and operate a railway from the state line, between the states of Ohio and Indiana, along the line hereinbefore described, to the town of Waterloo, and further authorized the president of the Toledo & Indiana Traction Company to proceed to acquire, by purchase, condemnation proceedings or otherwise, as in his judgment he might deem best, and at such price and upon such terms as he might approve, the right of way along the line between said points, which had not theretofore been acquired, and authorized him to employ counsel to institute and prosecute all necessary and proper proceedings in court for such purpose, and expressly authorized him to defend the proceedings in this cause for the condemnation of the real estate. The plaintiff and its officers and agents had full knowledge and notice of the ac-

220     SUPREME COURT OF INDIANA,

Toledo, etc., Traction Co. *v.* Toledo, etc., R. Co.—171 Ind. 213.

tions of Schenck and Longnecker; and that they were promoting, in the interest of themselves and others, their railway corporation, for the purpose of building and constructing an electric railway along and upon said right of way and that they had expended large sums of money in the surveying and staking out of the right of way aforesaid, and in procuring title to the real estate hereinbefore described, and had full knowledge and notice of the rights and title of said defendants, and the purposes and intentions of those defendants in procuring the right of way and in the construction of the street and interurban railway along the right of way aforesaid. Prior to and during the time these defendants were so procuring the title to said real estate for the right of way, the plaintiff was procuring a right of way for, and intending to construct, a railway along and upon a different route, connecting the town of Waterloo and the city of Butler, and still has control of this right of way, and, as these defendants charge, intends to construct its railway upon the same, and that these proceedings are not instituted in good faith, with the intention of using the right of way designated in the petition, but to obstruct and prevent these defendants from carrying out their object of constructing their railway from the village of Bryan, Ohio, to the town of Waterloo, Indiana, and plaintiff is not in good faith appropriating the lands for the public uses alleged in its amended petition, and with the intention of constructing an electric railway thereon. The defendants have the right, by virtue of the Ohio corporation, to extend the line in that state to the Indiana state line, and they intended to build and operate an electric railway from the state line, connecting with the Ohio interurban line, and extending to the town of Waterloo, over the lands so purchased by Schenck and Longnecker, who, in good faith, promoted the incorporation of said defendant railway, for the purpose of building said line of railway from the state line, between the states of Ohio and Indiana, along the line aforesaid to the

town of Waterloo. In furtherance of their object and purpose they, in good faith, took the title to the real estate aforesaid as promoters, in trust, to be conveyed to the Toledo & Indiana Traction Company when organized, and in good faith, and with diligence, pursued the promoting and building of said line of railway, in laying out and acquiring title to the right of way, and incorporating the defendant Toledo & Indiana Traction Company under the laws of Indiana, expending large sums of money in the doing thereof, of which facts the plaintiff and its officers and agents had knowledge. By reason of the facts aforesaid the defendants, before and at the time of the commencement of this proceeding, held, and now hold, the title to the real estate aforesaid as a right of way for street-railway purposes, with the intention of building an electric street-railway thereon, and they are able and willing and intend to carry out such purposes and object. By reason of the facts aforesaid the real estate hereinbefore described had been, and was at and before the commencement of these proceedings, dedicated to the public use for a right of way for an electric street-railway, and was at that time so held by the defendants for that purpose, and ever since has been so held. There is the further averment that the real estate is necessary to appellants' road.

It is alleged that, by reason of the facts aforesaid, the real estate described is not, and was not, at the time of the commencement of these procedings, subject to condemnation and appropriation by the plaintiff for the purposes and objects set forth in its amended petition, the instrument of appropriation in this cause.

Counsel for appellee contend, as a threshold proposition, that, because appellants reserved no exception to the interlocutory order of the court appointing appraisers, and made no motion to modify that judgment, there is no question before this court for decision. In answer to this contention, it may be said that section five of the emi-

222    SUPREME COURT OF INDIANA,

Toledo, etc., Traction Co. v. Toledo, etc., R. Co.—171 Ind. 213.

nent domain act of 1905 (Acts 1905, p. 59, §932 Burns 1908) provides: "If any such objection shall be sustained, the plaintiff may amend his complaint or may appeal to the Supreme or Appellate Court from such decision. * * * But if such objections are overruled the court, or judge, shall appoint appraisers as provided for in this act; and from such interlocutory order overruling such objections and appointing appraisers such defendants, or any of them, may appeal to the Supreme or Appellate Court," etc.

In the appeal of *Morrison* v. *Indianapolis, etc., R. Co.* (1906), 166 Ind. 511, we had occasion to construe these provisions of §932, *supra,* and in so doing we said: "The written objections as prescribed are of a dual character and are intended to serve the purpose of a demurrer and also a plea or answer. It is evident that, so far as they are directed or addressed to the face of the complaint, they perform the office of a demurrer and thereby raise an issue of law from the facts alleged, or disclosed by the complaint." In considering the provision, "or for any other reason * * * set up in such objections," we also affirmed that it was thereby intended that the written objection should perform the office of a plea or answer to the complaint, by alleging facts, which, if established or proved at the preliminary hearing, would operate to abate the action, or break down or defeat the plaintiff's right to condemn or appropriate the property involved. Of course, in a case in which the objection is addressed to the face of the complaint, as a demurrer is sustained, the plaintiff must reserve an exception to the ruling of the court if he desires to present any question upon such ruling in case he appeals to the Supreme Court. If at the preliminary hearing any or all of the objections tendering an issue of fact are, upon the evidence given at such hearing, overruled by the court in its interlocutory order, the objecting defendant must also except to such decision of the court in case he desires to appeal from

such order and present any question upon the overruling of such objection or objections. In this case, however, the court, and also the respective parties, apparently under a mistaken view in regard to the procedure, appear to have considered the motion of appellee to strike out certain paragraphs of the written objection as taking the place of a demurrer for want of facts. It is certainly manifest that had the plaintiff successfully demurred to paragraph ten

2. of the objections, and had the defendants excepted to such ruling on the demurrer, they could have appealed from the adverse interlocutory order and secured a decision of the Supreme Court without in any manner excepting to the interlocutory order of the trial court. Proceedings to condemn or appropriate property, in the exercise of the right of eminent domain, are not, in a

3. strict sense, ordinary civil actions, but are statutory actions of a special character, based wholly upon the statute by which they are authorized; but nevertheless, in respect to matters of practice therein, the provisions of the civil code, so far as applicable and consistent, may be invoked in such action. *Lake Shore, etc., R. Co.* v. *Cincinnati, etc., R. Co.* (1889), 116 Ind. 578; *Great Western, etc., Oil Co.* v. *Hawkins* (1903), 30 Ind. App. 557.

Under our civil code it has been firmly settled by the decisions of this court that a motion to strike out a pleading is not, as a general rule, designed to perform the of-

4. fice of a demurrer. The sufficiency of the pleading in regard to the facts therein alleged cannot be properly challenged in whole or in part by such a motion. *Guthrie* v. *Howland* (1905), 164 Ind. 214, and authorities cited; *Hart* v. *Scott* (1907), 168 Ind. 530. The trial court, in sustaining the motion of appellee to strike out the tenth paragraph of appellants' written objections upon the reasons stated in the motion, appears to have predicated its ruling on the ground that the facts therein alleged did not con-

224  SUPREME COURT OF INDIANA,

Toledo, etc., Traction Co. *v.* Toledo, etc., R. Co.—171 Ind. 213.

stitute a cause of defense to appellee's complaint. If appellee desired to test the sufficiency of this pleading in respect to the facts therein alleged, it should have demurred, as provided by the code, to an answer of a defendant in a civil action. But as the motion below to strike out was treated in the lower court as performing the office of a demurrer, we, for the purpose of this appeal only, and not as establishing a precedent, will so treat and consider it in determining the questions raised by the parties.

The argument advanced by counsel for appellants is that the facts set up in paragraph ten of the written objections show that, under the law applicable thereto, appellee 5. has no right to condemn or appropriate the lands in controversy for its right of way, for the reason that at and prior to the commencement of this proceeding these lands already had been dedicated to a public use. On the other hand, counsel for appellee combat this proposition, and argue that the facts set up in said paragraph do not show that these lands had been devoted to a public use. They insist that the purchase of lands, as is shown in this case, with a purpose, at some time in the future, of constructing a railroad thereover, does not impress them with a public use so as to prevent their condemnation for the right of way of another railroad prior to the building on such lands by said purchasers of the proposed railroad. Or, in other words, counsel for appellee state their proposition as follows: "Can individual promoters from Ohio, or any other state, come into Indiana and by buying lands, with the intention of, at some future time, building a railroad across them, or with the intention of, at some time in the future, promoting a corporation and having it build a railroad across them, withdraw those lands from the power of the State of Indiana to take them for a public use, by the exercise of its power of eminent domain; and that, as against a proceeding by the State, commenced before the corporation of the promoters is brought into being?"

Appellant's counsel assert that said question is fully answered in the negative by the decisions of this court. Possibly the tenth paragraph of the written objections may be open to the criticism that it intermingles facts and conclusions. The principal facts therein averred disclose that appellants Schenck and Longnecker were and are residents of the state of Ohio. They appear to be stockholders of and connected with an interurban railway company operating a line of railway from the city of Toledo to the town of Bryan, both in the state of Ohio. In October, 1906, these parties, with the purpose of extending the line of their railway from the town of Bryan to the Indiana state line and from thence to Waterloo, in Dekalb county, Indiana, procured from various landowners deeds to strips of land on the south side of the Lake Shore & Michigan Southern Railway Company from the Ohio and Indiana state line through the town of Butler to Waterloo, Indiana. The amount of land purchased by them was about eighty per cent of what would be required for a right of way of a railway. Schenck and Longnecker had the land thus procured by them surveyed and staked out, and took deeds of conveyance therefor in their individual names, "as trustees," no *cestui que trust* being mentioned therein, the conveyances being made to them as "trustees, their successors, heirs and assigns," it being provided in the deeds that the land was to be used only for railway purposes, and the conveyances were upon the condition that these grantees, "their heirs and assigns," should, within eighteen months from the date of said deeds, commence the construction of an interurban railway from Bryan to Waterloo, and complete the same within three years from said date; otherwise the lands were to revert to the grantors. Schenck and Longnecker accepted the conveyances of the land for railroad purposes, with the intention of constructing a railroad upon the land. These deeds were executed during the months of October, November and De-

cember, 1906. As previously shown, on January 1, 1907, appellee, which was then, and for some years prior thereto had been, a street and interurban railway corporation, duly organized and incorporated under the laws of Indiana, filed its complaint in the Dekalb Circuit Court to condemn or appropriate the land for a right of way of its railway from Waterloo to Butler, and notice was given to the owners of the lands described in the complaint. These descriptions included lands now claimed by appellants. On January 21, 1907, after the commencement of this action, appellants Schenck and Longnecker procured the incorporation of appellant Toledo & Indiana Traction Company, and on January 25 Schenck and Longnecker, representing this newly incorporated company, appeared in the lower court, and, upon application, were made defendants to the action, and thereupon, under their objections filed, claimed that they were the owners of a part of the lands described in the complaint, and that they held such lands for railroad purposes, and therefore the appellee could not condemn them for the purpose of a right of way, because they were already devoted to a public use. Counsel for appellee, in support of their insistence that the lands claimed to have been owned by Schenck and Longnecker at the time of the commencement of this proceeding—January 1, 1907—were subject to be appropriated by appellee for its right of way, cite the following authorities: *Indiana Power Co.* v. *St. Joseph, etc., Power Co.* (1902), 159 Ind. 42; *Southern Ind. R. Co.* v. *Indianapolis, etc., R. Co.* (1907), 168 Ind. 360, 13 L. R. A. (N. S.) 197; *Williamsport, etc., R. Co.* v. *Philadelphia, etc., R. Co.* (1891), 141 Pa. St. 407, 21 Atl. 645, 12 L. R. A. 220; *New Brighton, etc., R. Co.* v. *Pittsburgh, etc., R. Co.* (1884), 105 Pa. St. 13; *Washington, etc., R. Co.* v. *Coeur D'Alene R., etc., Co.* (1895), 160 U. S. 77, 16 Sup. Ct. 231, 40 L. Ed. 355; *Lake Merced Water Co.* v. *Cowles* (1866), 31 Cal. 215; *Morris, etc., R. Co.* v. *Blair* (1854), 9 N. J. Eq. 635; *Utah, etc., R. Co.* v. *Utah, etc., R. Co.* (1901), 110 Fed. 879;

*Rochester, etc., R. Co.* v. *New York, etc., R. Co.* (1888), 110 N. Y. 128, 17 N. E. 680.

In the case of *Indiana Power Co.* v. *St. Joseph, etc., Power Co., supra,* the facts, briefly stated, are as follows: Both of the parties in that case were hydraulic companies, incorporated under the same statute, and the object of each company, as expressed in its articles of association, was the same. It appears that the Indiana Power Company was incorporated on December 14, 1899, and it at once accepted and adopted the preliminary survey and plans made prior to its organization by its civil engineer; it also employed an engineer to make further surveys, plans and maps of the proposed site for its dam and all other works in connection therewith. In December, 1899, this company contracted for land on which it expected to build the south end of its dam and canal. On March 2, 1900, it marked off the land on both sides of the river according to the plans for the construction of its dam as contemplated, by setting out stakes corresponding with the civil engineer's surveying plans and maps. On March 5 and 10, 1900, it purchased these lands for the sum of $500, and expended in the survey, plans and specifications $2,323. The condemnation of the lands sought by the St. Joseph & Elkhart Power Company would destroy the value of the lands purchased by the Indiana Power Company as a site for the location and construction of its plant. The St. Joseph & Elkhart Power Company was not incorported until February 27, 1900, and on March 16, 1900, after the Indiana Power Company had acquired the lands in controversy by purchase, the St. Joseph & Elkhart Power Company filed in the office of the clerk of the St. Joseph Circuit Court its complaint and instrument of appropriation, for the purpose of condemning the portion of the lands which the Indiana Power Company had so purchased. At the same time the St. Joseph & Elkhart Power Company filed its petition to appraise the damages which the Indiana Power Company would sustain by such appropriation. It

was held by this court that appellant Indiana Power Company held the lands in question as a private individual, and, being so held, they were subject to the right of eminent domain and could be appropriated by the State for the public use expressed in the instrument of appropriation filed by appellee. In considering the questions there involved, the court said: ''Where such instrument of appropriation is filed, and lands are acquired by virtue of such proceeding, it is said, by many of the courts, that the corporation takes such lands by grant from the State, and that, by reason of the taking in this manner they are impressed with a public use. * * * It is true that the same section expressly authorizes the purchase in fee simple of lands by the corporation for the purposes of its organization, but it will be observed that the lands which may be so acquired are those which are described in the instrument of appropriation. In nearly all the cases where the courts have been called upon to decide the question of priority in right between conflicting claims to lands to be used for corporate purposes, they have held that the company by which the location is first made has the superior right. The difficulty arises in determining what acts constitute such location. It is said in Mills, Eminent Domain (2d ed.), §47: 'It does not signify that the articles of incorporation of one are prior in date to those of the other, or that one has made preliminary surveys over a particular route, or has made purchases of individuals along that route. Until the survey is made and filed, the company would hold the land purchased as any other individual landowner, and such land could be condemned by the rival company upon compensation. The priority of construction gives no rights where another company has perfected its location first.' '' The court further said, quoting from Randolph, Eminent Domain, §183: '' 'Where the conflict is between parties seeking to condemn, that one shall prevail who first makes a location in accord-

NOVEMBER TERM, 1908. 229

Toledo, etc., Traction Co. *v.* Toledo, etc., R. Co.—171 Ind. 213.

ance with the statute.' " Continuing, quoting from *Sioux City, etc., R. Co.* v. *Chicago, etc., R. Co.* (1886), 27 Fed. 770, the court said: " 'The right to the use of the right of way is a public, not a private, right. It is, in fact, a grant from the state, and although the payment of damages to the owner is a necessary prerequisite, the state may define who shall have the prior right to pay the damages to the owner, and thereby acquire a perfected title to the easement. The owner cannot, by conveying the right of way to A., thereby prevent the state from granting the right to B. * * * The state has the control over the right of way, and can, by statute, prescribe when, and by what acts, the right thereto shall vest, and also what shall constitute an abandonment of such rights.' The organization of appellant as a corporation, under the act for the incorporation of hydraulic companies, the recording of the articles of association, the selection of the site of the dam, the acquisition of the premises intended for the dam by deeds from the owners, did not, in our opinion, operate as a grant of those lands, or of any interest in them by the State to the corporation, nor impress upon them any public use. * * * The appellee proceeded strictly according to the terms of the statute. The appellant held certain lands, but, as is stated in the authorities, it held them as a private individual might." Upon a petition for a rehearing in that case, the court further said: "It is equally evident that under the statute authorizing the organization of companies for hydraulic purposes, the only public and unequivocal act by which such companies are empowered to indicate their intention to devote lands to a corporate and public use is by filing their instrument of appropriation in the office of the clerk of the county where the lands are situated. In the case before us, while the appellant was a hydraulic company, and had purchased lands in the vicinity of the St. Joseph river, it had built no dam, nor had it begun the construction of such a work, further than to cause

230        SUPREME COURT OF INDIANA,

Toledo, etc., Traction Co. *v.* Toledo, etc., R. Co.—171 Ind. 213.

surveys to be made, plans to be prepared, and stakes to be set out for the guidance of its workmen.''

In harmony with the decision in the case just quoted from is the later holding in *Southern Ind. R. Co.* v. *Indianapolis, etc., R. Co., supra.* In the latter case, the appellee, on March 14, 1906, filed its complaint in accordance with the act of 1905, *supra*, to condemn for a railroad right of way a strip of land about nine miles in length which belonged to the appellant, which company was made a defendant in the condemnation proceedings. The Southern Indiana Railway Company was a corporation, and had undertaken to build a branch line of railway from a point in Vigo county, Indiana, to Indianapolis, and for that purpose had purchased tracts of land in Owen county, which included the strip of land which the Indianapolis & Louisville Railway Company was seeking to condemn. The Southern Indiana Railway Company had performed some preliminary work on the lands in controversy in Owen county. This consisted of concrete work at the Eel river crossing and in making survey, grubbing and distributing a small amount of drainpipe. The money expended by said railway company on this account was $1,500, $500 of which had been expended upon the strip of land which the Indianapolis & Louisville Railway Company was seeking to appropriate. Prior to the filing of the complaint to condemn by the latter company the Southern Indiana Railway Company had filed a map and profile of its land in Owen county, but it contained nothing from which the right of way could be determined. This court, in considering the priority question as there involved, said: ''The law under which each of the railway corporations in question was incorporated only required that the articles of incorporation should designate the termini of the road, and the counties through or into which it would pass. There was, therefore, no grant to either of them of a specific right of way, and any conflict arising between them in respect thereto must be solved by priority of location.

This can be accomplished, not by ordinary acts *in pais,* but by some public act, which can be said, in a way at least, to commit the company, as between it and the State, to a definite location. * * * As the law stands in this State, we think there can be no question, in the absence of an actual occupancy for railroad purposes, or of steps taken under the statute which amount to a location of the right of way, that lands purchased by a railroad company on which to build its road are open to a location by means of a condemnation proceeding instituted by another company." Citing *Indiana Power Co.* v. *St. Joseph, etc., Power Co., supra;* 2 Lewis, Eminent Domain (2d ed.) §306. In *Southern Ind. R. Co.* v. *Indianapolis, etc., R. Co., supra,* the court, citing and commenting on the case of *Williamsport, etc., R. Co.* v. *Philadelphia, etc., R. Co., supra,* said: "It was held that in the absence of a legal location on the part of the plaintiff railway, it had no standing to enjoin the defendant railway from proceeding regularly to appropriate a certain lot, for which the plaintiff had contracted, and which it intended to use as a terminal for its railway, which was then in course of construction." The Southern Indiana Railway Company held the lands in controversy under unconditional deeds, but it appeared that it held them with the intention of devoting them to use as a right of way. But it was not occupying the lands and had not taken the steps under the statute which amounted to a location of the right of way. This court held that the lands in question were liable to condemnation by the appellee company.

In the case of the *New Brighton, etc., R. Co.* v. *Pittsburgh, etc., R. Co., supra,* thirteen private parties, contemplating promoting a railway company and securing its incorporation, caused a preliminary survey to be made over a route for the projected railway. Subsequently they incorporated the proposed railway and secured a charter. The company, after its incorporation, adopted the line of the preliminary survey as the location of its road. In the meantime, how-

232 SUPREME COURT OF INDIANA,

Toledo, etc., Traction Co. v. Toledo, etc., R. Co.—171 Ind. 213.

ever, another railway company had made a preliminary survey over the same ground and made a final location of its road. It was held that the latter company had the better title, and that the adoption by the former company, after its incorporation, of the line run before it was incorporated, could not operate to extend its title back to the date of the preliminary survey. The rule declared and enforced by the court in this latter case is quite applicable to and influential under the facts in the case at bar.

To recapitulate, Schenck and Longnecker, mere private individuals, contemplating the promoting and incorporating of a traction railway company, which was to construct its railroad over the land here involved from the Indiana state line to Waterloo, caused the route to be surveyed and staked off, and acquired title thereto by conveyance from the owners of the land. About two months after acquiring title to the land they appear to have promoted appellant Toledo & Indiana Traction Company, which was incorporated on January 21, 1907. After the incorporation of this company Schenck and Longnecker conveyed the land to it. Some twenty days before appellant company was incorporated, appellee, having the right to exercise the power of eminent domain, instituted this action under and in pursuance of the eminent domain statute of 1905 (Acts 1905, p. 59, §§929-937, 939, 940 Burns 1908), and took the steps required by law to locate its right of way over the lands in dispute and to appropriate them to its use as and for a right of way, subject, however, to the payment of such damages as might be legally assessed. Section one of that act (§929, *supra*) provides: "Any person, corporation, or other body having the right to exercise the power of eminent domain for any public use, under any statute, existing or hereafter passed, and desiring to exercise such power, shall do so only in the manner provided in this act except as otherwise provided herein." Schenck and Longnecker, as individuals, were not invested by any statute of this State with the right of

eminent domain in respect to condemning or appropriating lands for the right of way of any railway, consequently the steps taken by them in respect to surveying and staking off the lands and obtaining conveyances therefor prior to the commencement of this action were not in pursuance of any statute. It will be noted that under the conveyances to them they were, within eighteen months from the date of the deeds, to commence the construction of a railway from Bryan, Ohio, to Waterloo, Indiana. Certainly it would not be tenable to argue that they, as the promoters of a railway to be organized at some time in the future, by making, as they did, a survey of a route for the building of a railroad by a proposed but unorganized railway company, which might never be organized or incorporated, could thereby withdraw the lands in question for a period of eighteen months, or for any other period of time, from the power of the State to condemn or appropriate them for a public use.

The conveyances of the land which Schenck and Longnecker secured from its owners placed them in the position of the owners of real estate, and certainly no good or

6. sufficient reason can be assigned to show that such real estate, on January 1, 1907, while under their ownership, was not liable to condemnation by the State for a public use as a right of way of appellee's railroad. The conveyances of Schenck and Longnecker to appellant company, after the land was appropriated by appellee and a servitude fastened thereon, could not operate to confer upon that company any better title or right to the land than that which had been acquired and was held by its said grantors at the time of the conveyance. The contracts entered into by and between the landowners and Schenck and Longnecker at the time the latter obtained the deeds of conveyance cannot, in any sense, be said to have been the contracts of appellant company, for it at that time was unincorporated and had no existence. It was in no manner liable thereon or bound thereby. 2 Cook, Corporations (5th ed.), §707, and authorities cited.

These were merely the personal contracts of Schenck and Longnecker, and not those of the railway company, which they intended thereafter to incorporate. *Carmody* v. *Powers* (1886), 60 Mich. 26, 26 N. W. 801.

But it is alleged in the tenth paragraph of the objections, and claimed by appellants' counsel, that, at the time Schenck and Longnecker conveyed the land to appellant company, the latter adopted the right of way which had been surveyed and staked off by its said grantors, and fully ratified and confirmed their acts in the locating and purchasing of such right of way. It must be remembered that, at the time of the conveyance of the land to appellant, the state, through appellee company, had already fastened a servitude thereon. The adoption, however, by appellant company, as alleged and claimed, would not relate back to the time when the preliminary survey, location and purchase of the right of way were made by its grantors, and thereby become effective as of that date. In no sense could such adoption relate back so as to interfere with, break down or devest the servitude upon the land which appellee company had acquired under the steps and proceedings which it had taken in pursuance of the statute.

In *New Brighton, etc., R. Co.* v. *Pittsburgh, etc., R. Co., supra,* the court held that a railroad company, after its incorporation, could not adopt a preliminary survey and location made prior to its incorporation by parties who had no authority under the law to make such preliminary survey and location. It was affirmed that the adoption by the railroad company in question of the preliminary line, run before its incorporation, would not carry its title or right back to the date of such preliminary survey. The court, in the course of its opinion in that case, said: "Doubtless a preliminary survey, made at the instance of persons contemplating the procurement of a charter, greatly facilitates the work of the corporation, afterwards created, in making its location, and designating the same by marks on the ground;

NOVEMBER TERM, 1908.        235

Toledo, etc., Traction Co. *v.* Toledo, etc., R. Co.—171 Ind. 213.

and there can be no impropriety in the corporation's re-
solving to adopt such preliminary survey, but that alone,
without more, will not secure to it the right of location as
against another company that goes upon the ground, sur-
veys, marks, and actually appropriates the proposed loca-
tion.''

In *Washington, etc., R. Co.* v. *Coeur D'Alene R., etc., Co.,
supra,* it was contended that the appellant company had the
right, after it became duly incorporated, to adopt as its
right of way the preliminary line run by a surveyor, claim-
ing to be acting for the company, before it had been fully
incorporated, and that when such line or right of way so
surveyed was adopted by the company it would relate back
to the date when such survey was made. The court, how-
ever, said: ''We are unable to accept such a view of the
law. * * * Until the power to build the road upon the
surveyed line was in a proper manner assumed by or con-
ferred upon the plaintiff company, its acts of making sur-
veys were of no avail; and that, so far as the conflicting
rights of the parties to this controversy are concerned, the
status of the plaintiff is the same as if the survey of Octo-
ber 28, 1886, had not been made.''

In *McArthur* v. *Times Printing Co.* (1892), 48 Minn. 319,
51 N. W. 216, 31 Am. St. 653, the court, in considering the
question of the adoption of contracts by a corporation, made
by its promoters before its organization, said: ''What is
called 'adoption,' in such cases, is, in legal effect, the making
of a contract of the date of the adoption, and not as of some
former date.'' We are not impressed with, and cannot con-
cur in, the contention that appellant company, after it was
incorporated, upon receiving the conveyance of the lands
from Schenck and Longnecker thereby ratified and con-
firmed the prior acts and contracts of said grantors relative
to the right of way in controversy. It is unreasonable to
assert that the company could ratify, in the legal or proper
sense of that term, the acts performed by Schenck and Long-

236 SUPREME COURT OF INDIANA,

Toledo, etc., Traction Co. *v.* Toledo, etc., R. Co.—171 Ind. 213.

necker, and the contracts made by them before the company had been brought into being or had a legal existence. The rule upon this proposition appears to be properly stated in 23 Am. and Eng. Ency. Law (2d ed.), 889. We quote from the text, which is well supported by the authorities. ''A ratification, properly so called, implies an existing person, on whose behalf the contract might have been made at the time. There cannot, in law, be a ratification of a contract which could not have been made binding on the ratifier at the time it was made because the ratifier was not then in existence.''

In *McArthur* v. *Times Printing Co., supra,* the court, in dealing with the question of ratification, said: ''Although the acts of a corporation with reference to the contracts made by promoters in its behalf before its organization are frequently loosely termed 'ratification,' yet a 'ratification,' properly so called, implies an existing person, on whose behalf the contract might have been made at the time. There cannot, in law, be a ratification of a contract which could not have been made binding on the ratifier at the time it was made, because the ratifier was not then in existence.''

Whatever appellant company, after its organization, may have done, by way of adoption or ratification of the acts and contracts of Schenck and Longnecker, was of no more legal effect or import than would have been a new contract or a new deal on its part of the same date, which was at least twenty days after appellee had appropriated the land to a public use.

Although we have not set out and referred to in detail all of the minor points and questions argued by counsel for appellant, we have, however, in general, considered all of them, but discover no error in the ruling of the trial court. Consequently the interlocutory order should be, and is hereby in all things, affirmed.

Toledo, etc., Traction Co. *v.* Toledo, etc., R. Co.—171 Ind. 213.

## CONCURRING OPINION.

MONTGOMERY, J.—I concur in the disposition made of the principal question in this case and in the final result reached, but disagree with so much of the opinion as sanctions the practice of demurring to an objection to a complaint in condemnation proceedings. No causes or grounds of demurrer to an objection are prescribed, and, in my opinion, no such demurrer should be entertained. The statute expressly declares that no pleadings other than the complaint, objections thereto, and answer authorized by section eight of the act (Acts 1905, p. 59, §936 Burns 1908) shall be allowed. This is a special proceeding, and this preliminary hearing is not governed by the civil code, but may be had before the judge in vacation as well as in open court, and was intended to be of an expeditious and summary character. The objections authorized must, from the nature of the case, in most instances serve the purpose of demurrers, and challenge the jurisdiction of the court or the right of the plaintiff, upon the face of the complaint, to exercise the power of eminent domain for the use sought. Facts may be set up affirmatively, by way of objection, which if true would abate or defeat the plaintiff's right to exercise the power of eminent domain generally, or for the use sought, or with respect to the particular property involved.

The filing and submission of objections invokes the judgment of the court upon the sufficiency of the complaint, and such objections without other request, motion or demurrer. If the court is without jurisdiction, or the complaint is manifestly insufficient, the objections should be sustained. If the court has full jurisdiction, and the complaint upon its face is sufficient to authorize the condemnation sought, such objections as perform the office of a demurrer, and such affirmative objections as, conceding their truth, would not abate or defeat the proceeding, should be overruled; and

such objections as allege facts sufficient to abate or defeat the asserted right should be sustained.

When an objection has been sustained to the complaint, the plaintiff may amend, or, electing to stand upon the pleading, may suffer judgment to go in favor of the defendant, or, in case the objection be affirmative, call for proofs. When an objection is overruled the defendant with leave of court may amend, or, electing to stand upon such objection, may suffer judgment to go in favor of the plaintiff. Appraisers will not be appointed until the court or judge in vacation is satisfied as to the regularity of the proceedings and the right of the plaintiff to exercise the power of eminent domain for the use sought. After the hearing upon the complaint and the affirmative objections, if any remain, appraisers should be appointed or refused in accordance with the law and facts established, and from this order either party, having saved proper exceptions, may appeal. *Westport Stone Co.* v. *Thomas* (1908), 170 Ind. 91.

This practice, in my opinion, conforms to the positive directions of the statute, fully secures the rights of the parties, and simplifies and facilitates the object sought to be attained by the proceeding.