WISCONSIN POWER & LIGHT COMPANY, Respondent, vs. PUBLIC SERVICE COMMISSION and another, Appellants.

*February 12—March 9, 1937.*

For the appellants there was a brief by the *Attorney General, H. T. Ferguson,* counsel for the Public Service Commission, and *Stanley W. Slagg,* attorney for the city of Edgerton, and oral argument by the *Attorney General* and *Mr. Slagg.*

For the respondent there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *William Ryan.*

FAIRCHILD, J. A proposition, whether in affirmative or interrogatory form, should be so phrased as to carry a true

and complete meaning to those addressed. The voters of the city of Edgerton were asked to disclose their attitude toward the acquisition of a plant used for distribution of light, heat, and power. The rights and property were subject to purchase by the city, and the procedure was prescribed by statute. The utility company, by its acceptance of an indeterminate permit, is deemed to have consented to a purchase of its property actually used and useful for the convenience of the public by the municipality in which the major part of it is situate. Sec. 196.57, Stats. The statutes provide that any municipality shall have the power, subject to the provisions of chs. 196 and 197, Stats., to purchase any public utility or any part thereof, provided that such purchase and the terms be approved by the Public Service Commission. Sec. 197.01 (2), Stats.

It is conceded that the property involved in this case, for the taking of which the plaintiff has waived the constitutional requirement of establishment of necessity, and which it has consented that the city of Edgerton may acquire without the verdict of a jury, includes property in substantial amount located outside the city as well as property located within the city. It seems clear that the municipality may acquire the property it proposes to take under the approval of the Public Service Commission if it has had an expression in favor of it by a majority of the citizens of Edgerton.

The plaintiff insists that the electors voted to acquire no property except that located within the city, and that the Public Service Commission has fixed compensation not only for the property located within the city, but a substantial amount of property located outside as well. So the true meaning of the question submitted must be determined. It will be of some help to have in mind the situation as it must have been known to the citizens of Edgerton. The Wisconsin Power & Light Company owns property for the trans-

mission of electric power, including the so-called Sheepskin substation, on its main line from Prairie du Sac to Janesville, whence a transmission line runs to the city limits of Edgerton. It there enters the city, runs through it a short distance, emerges at a point where the city limits are irregular, then re-enters the city, is joined by a line from a hydro-generating plant at Indian Ford, proceeds to the city substation, and then north out of the city toward Cambridge. Branch lines leave this transmission line and serve directly several industrial customers and a number of domestic customers. To it is connected the city substation from which power is distributed to the city generally. Three rural lines are extensions of the city distribution system and serve parts of the towns of Albion, Fulton, and Milton, outside the city limits of Edgerton.

On June 27, 1933, a majority of the electors of the city of Edgerton at a special election voted affirmatively on the following question:

"Shall the city of Edgerton purchase the rights and property of the Wisconsin Power and Light Company actually used and useful for transmission, delivery and furnishing of heat, light and power within the city of Edgerton, and construct and operate a plant and equipment for production and furnishing of electricity?"

Due notice having been given, hearings as to the proper compensation were had before the Public Service Commission. The commission found that the entity of property subject to acquisition by the city includes all the property within the city, excepting only the transmission line property of the Indian Ford-Cambridge line, the transmission line from the Sheepskin substation into the city (by stipulation), and the three rural extensions of the city distribution system, serving customers outside the city. The commission fixed as just the compensation of $95,000.

The circuit court set aside the order of the commission. It was there claimed that the compensation ordered by the commission was inadequate; that the commission was without jurisdiction to act because the vote did not authorize the acquisition of any property not located within the city of Edgerton, and there had been no jury verdict of the necessity of the taking of less than the utility entity by the city; because the vote was a nullity, the question being double and not permitting an elector to express his choice on each proposition separately; and because the vote did not authorize the acquisition of plaintiff's electric utility without its gas utility. The court concluded that neither plaintiff's predecessor in interest nor plaintiff had consented to a purchase of that portion only of the electrical property which is within the city without a jury verdict of necessity, and that there has been no vote of the electors of the city of Edgerton to acquire the electrical property of plaintiff located outside the city of Edgerton, and rendered judgment for plaintiff without passing on the question of just compensation.

The voters were in favor of acquiring rights and property of the utility, and the particular rights and property which they were considering were those which were of actual use to them. The question described the rights and the property as used and useful for the transmission, delivery, and furnishing of heat, light, and power within the city of Edgerton. That some plausability may exist to appear to support an interpretation that citizens voting affirmatively on the question were limiting their buying to the property within the city limits does not overcome a plain meaning contained in the question. The place phrase "within the city of Edgerton" must be construed to be descriptive of the purpose, "transmission, delivery and furnishing of heat, light, and power," for which the rights and property are used and useful and it does not impose upon "rights and property" of the

Power & Light Company a territorial limitation merely co-extensive with the city limits. As quoted in *Zwietusch v. East Milwaukee*, 161 Wis. 519, 522, 154 N. W. 981, 982, and in *Dagan v. State*, 162 Wis. 353, 354, 156 N. W. 153:

"By what is known as the doctrine of the 'last antecedent,' relative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote, unless such extension is clearly required by a consideration of the entire act."

We agree with plaintiff that the legislature unquestionably had in mind that if the municipality took over this electrical plant,—

"it should step in the shoes of the public utility owning the property and continue to furnish service not merely to the inhabitants within the city limits, but also to the people living near by but outside the city limits. If such were not the case, the acquisition by the city of only that part of the property which is located within the city, would deprive the people just outside the city of electrical service. . . . Undoubtedly, that is the reason why section 196.57 of the statutes contains the provision that the owner of the property consents to a future purchase of its property actually used and useful for the convenience of the public by the municipality in which the major part of it is situate."

By the doctrine of the "last antecedent," the question submitted to the voters and answered in the affirmative authorizes the acquisition of rights and property even if located outside the city if used and useful for furnishing power within the city. The question is, finally, Are the rural lines extending outside the city used and useful for furnishing power within the city? It is to be remembered that these lines are physical extensions of lines originating at the city substation and serving the city. If these lines are cut at the city boundary, those rural customers now served will be left

without power.  As a business proposition, the ability to sell power to the rural customers may well be of some advantage in the operation of the city distribution plant.  These lines are in that sense used and useful for furnishing power within the city.  Furthermore, no voter, informed of the facts, would think of these rural lines as anything but a portion of the utility entity which is used and useful for furnishing power within the city.  In other words, the question to the voter was, Shall the city acquire the power system which serves it?  Such a question would necessarily include within the system integral parts which happened to serve others.

The next objection is that the question submitted was double, involving two distinct proposals.  The electors, by a large majority, voted to buy rights and property and to "construct and operate a plant and equipment for production and furnishing of electricity."  In support of this objection, there are cited several cases, but we do not find them controlling.  The case first cited is *State ex rel. Williams v. Sawyer County*, 140 Wis. 634, 123 N. W. 248.  In that case a resolution by a county board adopting the provisions of an act of the legislature and providing for the establishment of a municipal court was held at least partially void because it contained a double proposition.  The decision is based, however, on the requirement of the particular legislative act that the two propositions should be dealt with by separate resolutions.  The other Wisconsin case cited is *Neacy v. Milwaukee*, 142 Wis. 590, 126 N. W. 8.  There the voters of Milwaukee voted a bond issue of $500,000 to *erect and maintain* a municipal electric light plant.  The city had no authority, even after a referendum, to issue bonds for maintenance.  Taking this into consideration the court said:

"It is impossible to say with reasonable certainty that the voters have authorized the issue of bonds to any specific amount for the construction alone of a municipal lighting plant, nor that they may not have been induced to vote in

favor of the policy by reason of their approval of the use of the bonds for the purposes of maintenance."

The case is different here. The two propositions are clearly stated; those in favor of both would vote "Yes," while those in favor of either and opposed to the other as well as those opposed to both, would vote "No." *Wisconsin Gas & E. Co. v. Fort Atkinson,* 193 Wis. 232, 258, 213 N. W. 873.

Plaintiff's third objection is that the question is triple in that it applies to a gas distribution system owned and operated in Edgerton by plaintiff. The trial court found that the gas utility was operated under a franchise for the furnishing of gas "to supply the city of Edgerton and its inhabitants for cooking, lighting and other purposes;" and that at the time of the special election the plaintiff was supplying gas only for the purposes of cooking and heating. Turning again to the question submitted to the voters, there are two facts indicating that plaintiff's gas plant was not concerned. These were that the first proposition was to purchase property used and useful for furnishing *heat, light, and power,* while the gas plant furnished only heat, no light, and no power; and that the second proposition for the construction and operation of a plant for the production and furnishing of electricity indicates that the attention of the voters was focused on the electric rather than the gas utility.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.