CISCO *v.* CAUDLE, COUNTY JUDGE.

4-8159                                    198 S. W. 2d 992

Opinion delivered January 13, 1947.

*Suzanne Lighton,* for appellant.

*Clifton Wade* and *Virgil Ramsey,* for appellee.

SMITH, J. Many electors of Washington county petitioned the County Court of that county to submit the question of the construction of a County Hospital, and to levy a building tax to pay bonds to be issued and sold in payment thereof. The proceeding was had under the authority of Amendment No. 17 of the Constitution, as amended by Amendment No. 25. Amendment No. 17 authorized the issuance of bonds upon the vote of the electors of a county for the purpose of building court houses and jails, and was amended by Amendment No. 25 to authorize the issuance of bonds to build county hospitals.

The petition stated the location of the proposed hospital and recited that the tax to be voted for the payment of the costs of the hospital should not exceed one and

one-half mills on the assessed valuations of the county to be levied annually.

On October 5, 1946, the petition was heard by the County Court and an order was entered declaring the necessity for the construction of the hospital, and an architect was employed with directions to prepare and file plans for the proposed hospital with an estimate of its cost. The architect filed plans and specifications, which he had previously prepared, and estimated the cost of the hospital at $424,440. These plans, specifications and estimate of cost were approved on the same day, and an order was entered directing that the question be submitted at the next ensuing general election to be held November 4, 1946, whether the hospital should be erected and a building tax not exceeding one and one-half mills be levied. The court directed that the ballot to be used at the election should contain an explanatory paragraph, showing the estimated cost to be $424,440, and the proposal to levy the tax, not to exceed one and one-half mills to retire bonds issued in payment of the cost of the hospital. The court directed that the question of the building tax be stated on the ballot as follows: "For the Levy of a Building Tax Not to Exceed One and One-Half Mills", and "Against the Levy of a Building Tax Not to Exceed One and One-Half Mills."

The county clerk delivered a certified copy of the court order to the sheriff, who gave public notice by posting copies of the order throughout the county, of the time and several places of holding the election, and posted a copy of the proclamation in each of the places fixed for holding the election, and at two or more public places in each township.

Pursuant to the court order and the proclamation of the sheriff, the question was submitted at the ensuing general election. The ballots used contained the following recitals:

"Proposed Initiated Act of Washington County, Arkansas (Initiated by Petition of the People and by Order of the County Court).

"Authorizes the construction of a County Hospital at an estimated cost of $424,440 and the levy of a building tax not to exceed one and one-half (1½) mills to pay bonds issued therefor.

"For the Construction of County Hospital.

"Against the Construction of County Hospital.

"For the Levy of a Building Tax.

"Against the Levy of a Building Tax."

It will be observed that the ballot referred to the question submitted to the electors as an "Initiated Act," which it was not, but we think this error did not affect the validity of the election.

At the election 2,414 votes were cast for the construction of the hospital, and 749 against its construction, and 2,120 votes were cast for the levy of the tax, and 889 against the tax levy. The County Board of Election Commissioners duly certified the results of the election, and on November 19, 1946, the County Court entered an order showing the results of the election, which order was duly published on November 29, 1946, in a county newspaper and this suit was filed within thirty days of that date.

The records of the Quorum Court at its meeting subsequently held, recited that "Motion made and duly seconded to levy a one and one-half mill hospital tax" and that "upon roll call said tax of one and one-half mills duly levied for hospital."

Appellant, a citizen and taxpayer of Washington county, filed suit in Chancery Court in which it was alleged that the county judge was about to let a contract for the construction of a hospital which could not be paid for out of the proceeds of a tax levy of one and one-half mills, disregarding the limitation of cost filed by the electors at the election.

This appeal is from the decree of the court sustaining a demurrer to this complaint and the principal question presented is, whether a hospital can be built which

a tax levy of one and one-half mills would not suffice to pay.

For the reversal of the decree dismissing the complaint it is argued that the election is void because the required notice thereof was not given. The law in regard to the notice was not strictly complied with, but upon the authority of the case of *Whitaker* v. *Mitchell,* 179 Ark. 993, 18 S. W. 2d 1026, and cases there cited, we hold that the election was not void on that account. Our leading case on this question is *Wheat* v. *Smith,* 50 Ark. 266, 7 S. W. 161, where Chief Justice Cockrill said that the voice of the people is not to be rejected for a defect or want of notice, if they have in truth been called upon to speak and have spoken.

The real question in the case is whether the county, pursuant to the election, may erect a hospital from the proceeds of the sale of bonds, which a tax levy of only one and one-half mills will not pay, or otherwise stated, may the tax levy exceed one and one-half mills for this purpose.

Amendment No. 17, as amended by Amendment No. 25, unlike Amendment No. 10, confers a power which may be exercised only when authority for its exercise has been conferred by a vote of the electors of the county. The power conferred by Amendment No. 25 amending Amendment No. 17 is quiescent until quickened into life by a vote of the people.

Unquestionably a tax, not exceeding five mills, may be authorized by the electors for the building of a court house, a jail, or a hospital, not for each of them, but for any one or all of them. The entire power might be exhausted in the construction of any one of the three, but the amendment does not require that it shall be. The electors might vote for any one or all three purposes such tax levy as they please, subject to the limitation that they may not vote for any one or all three purposes a tax levy exceeding five mills. The authority conferred by Amendment No. 25 is "to authorize the levy of a tax not to exceed one-half of one per cent (or five mills) on

the dollar of the valuation of all the properties in such county subject to taxation to defray the costs and expenses thereof, etc.''

Bonds may not be issued to construct a court house, jail or hospital, unless the consent of the electors is first obtained at an election held for that purpose. But may the electors limit the tax levy to a rate less than five mills? They may, if they have the power to exercise the discretion conferred to levy a tax not to exceed five mills. Why were they given the discretion as to the amount of tax to be levied if they do not have the power to exercise that discretion? We have no hesitancy in saying that the electors do have this discretion.

But did they exercise this discretion and did they limit the tax levy to one and one-half mills? We think they did. The electors might not know what a hospital would cost, but they would know what they are willing to pay in taxes to get one. The court order from which the authority to hold the election was derived is entirely unambiguous. It specifies a tax not of one and one-half mills, but a tax ''not to exceed one and one-half mills.'' The County Board of Election Commissioners followed the court's order in so far as the explanatory paragraph was concerned, but in stating the tax question they omitted the limiting phrase, ''not to exceed one and one-half mills'' and simply submitted the question ''For the Levy of a Building Tax,'' and ''Against the Levy of a Building Tax.'' Did the failure to follow literally the court order remove the limitation as to the tax voted?

Counsel for appellee says the sentence appearing on the ballot limiting the tax to one and one-half mills does not govern and is mere surplusage and in support of this contention cites the case of *Wisconsin Power & Light Co.* v. *Public Service Comm.*, 232 Wis. 59, 286 N. W. 588, 122 A. L. R. 1135. This case has an extended annotation on ''Validity of special election as affected by publication or dissemination of matter or information, extrinsic to the question as submitted, regarding nature or effect of the proposal.'' The cases on the subject are

summarized by the annotator in a note, which appellee quotes, reading as follows:

"Although of course the extent and deceptive nature of any particular inclusion of extrinsic or foreign matter in a notice of a special election are largely determinative of the question whether such inclusion may be regarded as being so immaterial or harmless as not to affect the validity of the election, or as being so misleading as to vitiate the election, it may be noted that in practically all of the cases involving the point, the extraneous matter has been of a sort which has not been so objectionable as to mislead the voters, or at least has not been shown to have done so."

We are dealing here not with a notice of the election, but with a recital on the ballot relating to the question submitted to the electors on the ballot used in the election. The recital reminded the electors that they were voting on the question whether a tax not exceeding one and one-half mills should be voted for a hospital.

If the recital were treated as surplusage, appellee's position is not improved. The court order made on the petition of the electors conferred such power as the electors had. There was no question as to the issue upon which the electors were voting, that question being whether a tax not exceeding one and one-half mills should be voted for a hospital, and the recital as to the purpose of the election was at least a reminder as to the tax being voted for. Certainly it cannot be disregarded as unimportant, as it tended to influence the action of the electors in casting their ballots.

The result of the election was to authorize a tax levy of not to exceed one and one-half mills to construct a hospital, and the petitioners had the right to limit the amount of the taxes for this purpose.

Amendment No. 3 to the Constitution confers upon the electors "the power to levy not exceeding three mills on the dollar on all taxable properties of their respective counties," for road purposes, and in the case of *Wallace*

v. *K. C. So. Ry. Co.,* 169 Ark. 905, 279 S. W. 1, Judge Hart said: "It will be noted that the three-mill road tax is a voluntary self imposed tax by the electors of the respective counties of the State, and the electors themselves are made the exclusive judges of the necessity for levying the tax and as to the amount to be assessed not exceeding three mills on the dollar."

So here the electors had the right to limit the levy for hospital purposes not to exceed one and one-half mills.

The complaint in the case alleges, and the demurrer admits, that the hospital which the county judge now proposes to build cannot be erected and paid for with the proceeds of a tax of only one and one-half mills. If this be true, the hospital may not be built, as bonds may not be issued in excess of an amount which a tax levy of one and one-half mills will not suffice to pay.

In the case of *Ivy* v. *Edwards,* 174 Ark. 1167, 298 S. W. 1006, it was proposed to build a court house, to be paid for in annual installments derived from the county general revenue. A taxpayer sought to enjoin the letting of a contract for the construction of a court house, upon the ground that the proposed annual installments of payments could not be met after the county had paid the necessary expenses of government. The finding was made, however, that the county could meet the annual installments after paying the necessary expenses of government, and the relief prayed by the taxpayer was denied. The implication is clear, however, that the relief prayed would have been granted had the showing been made that the county could not meet the annual installments after paying the necessary expenses of the county government.

Here we have the allegation, admitted by the demurrer, that the county cannot build the hospital proposed and pay the bonds with a tax levy of only one and one-half mills. If this cannot be done, the county will proceed beyond and in excess of the power conferred by the electors if it attempts to build a more expensive

hospital. The county, under the election, may build a hospital for which a levy of one and one-half mills will pay, but this is the full extent of the power conferred at the election.

The decree from which is this appeal will, therefore, be reversed, and the cause remanded with directions to overrule the demurrer and for further proceedings not inconsistent with this opinion.