CITY OF LEBANON *v.* PUBLIC SERVICE COMPANY
OF INDIANA ET AL.

[No. 26,976. Filed May 11, 1938. Rehearing denied
June 7, 1938.]

*Roscoe Hollingsmith,* and *Adney & Adney,* for appellant.

*Parr, Parr & Parr, Rogers & Smith,* and *Evans & Hebel,* for appellees.

*Harry K. Cuthbertson,* amicus curiae.

TREMAIN, J.—This was an action by the appellant against the appellee to condemn and acquire the electric distribution system and property of the appellee Public Service Company of Indiana, within the city of Lebanon and adjacent territory. The complaint is in a single paragraph and is in the customary form for the condemnation of property under the Eminent Domain Act of 1905, Secs. 3-1701 to 3-1712, Burns' Ind. St. 1933, §§14061 to 14072 Baldwin's Ind. St. 1934. It alleges the municipal character of the appellant, the incorporation of the appellee Public Service Company of Indiana and of its predecessor in title, the surrender of a charter issued to the appellee and the acquisition of an indeterminate permit to furnish electric service to customers within the city of Lebanon and adjacent territory; that the appellee Union Trust Company of Indianapolis is a trustee under a certain indenture agreement. (It need not be referred to in this opinion. The Public Service Company will be treated as the sole appellee.)

It is further alleged in the complaint that, on the 14th day of December, 1936, a petition was presented to the common council of the city of Lebanon, signed by more than 5 per cent of the qualified voters of the city, in which the common council was asked to acquire, purchase, or condemn and operate the utility property, used and useful, of the appellee in furnishing electric utility

service to the city, and to customers therein and in adjacent territory within Boone County. The council adopted a declaratory resolution to purchase, acquire, or condemn the electric utility property of the appellee. It also adopted an ordinance calling for a special election to determine the question of acquiring, purchasing, or condemning the property. The ordinance provided for notice. The notice was given and a special election was held at the time fixed by the ordinance, in which 1,556 votes were cast in favor of the purchase or condemnation of the property and 732 votes were cast against the proposition. Thereafter, an ordinance was passed by the common council of the city approving the action of the voters at the special election, and determining to purchase, acquire, or condemn the proprety described, all in accordance with Chapter 76 of the Acts of the General Assembly of Indiana of 1913, as amended by Chapter 190 of the Acts of the General Assembly of 1933 and Chapter 293 of the Acts of the General Assembly of 1935. Thereafter, the common council adopted another resolution authorizing and directing the proper officers of the city to offer the appellee the sum of $140,000 for its electric public utility distribution system property serving said city and customers thereof, which price was considered and determined to be a fair purchase price for said property. Pursuant to said resolution the city, through its proper legal officers, made a written proposal to appellee to purchase for that sum, which offer the appellee formally rejected. After such rejection the common council adopted another ordinance declaring that a public necessity existed for the condemnation of appellee's property. The complaint described in detail the property desired to be condemned, but expressly stated that "no electric utility property within the town of Ulen nor any other incorporated town is included." The complaint alleged that

the appellant desired to use all of said property, when so acquired, for the purpose of distributing electric energy to the consumers of the territory described.

The prayer of the complaint was that the plaintiff be declared the owner by condemnation of the local electric distribution system of the defendant, and asked that three disinterested freeholders be appointed to assess the damages to which the defendant will be entitled by reason of the condemnation.

To this complaint the appellee filed its written objections consisting of 28 separate and several specifications.

At this juncture it may be well to consider the office of the objections filed to the complaint in this proceeding. Most of the objections go to questions of fact appearing upon the face of the complaint. Under such circumstances the objections should be regarded as a demurrer. *Toledo, etc., Traction Co.* v. *Toledo, etc., R. Co.* (1908), 171 Ind. 213, 86 N. E. 54; *Morrison* v. *Indianapolis, etc., R. Co.* (1906), 166 Ind. 511, 76 N. E. 961, 77 N. E. 744.

In the latter case this court said, page 525:

> "The written objections as prescribed are of a dual character and are intended to serve the purpose of a demurrer and also of a plea or answer. It is evident that, so far as they are directed or addressed to the face of the complaint, they perform the office of a demurrer and thereby raise an issue of law upon the facts alleged, or disclosed by the complaint."

The Eminent Domain Act of 1905, Sec. 5, being Sec. 3-1705, Burns' Ind. St. 1933, provides that written objections may be filed to the complaint; that no pleadings other than the complaint and written objections shall be allowed except the answer provided for in Section 8 of the Act (Sec. 3-1707, Burns 1933); that pleadings may be amended by leave of court; that, if objec-

tions shall be sustained, the plaintiff may amend his complaint or appeal to the Supreme Court.

Proceedings to condemn property, in the exercise of eminent domain, strictly are not civil actions, but are actions of a special character, based upon a statute by which they are authorized. However, when the Civil Code is applicable it may be invoked. *Lake Shore and Michigan Southern Ry. Co.* v. *C., W. and M. Ry. Co.* (1889), 116 Ind. 578, 19 N. E. 440; *Great Western Nat. Gas and Oil Co.* v. *Hawkins* (1903), 30 Ind. App. 557, 66 N. E. 765; *Westport Stone Co.* v. *Thomas* (1908), 170 Ind. 91, 83 N. E. 617; *Toledo, etc., Traction Co.* v. *Toledo, etc., R. Co., supra*

In the case at bar the court sustained the objections as an entirety This ruling had the legal effect of sustaining a demurrer to the complaint in a civil action. The plaintiff had the choice of pleading over or appealing. At the time the court sustained the objections, the record recites:

"The plaintiff now refuses to amend its complaint herein or plead over, and the court now enters judgment for the defendants, and each of them, that the plaintiff take nothing by this action and that the defendants recover from the plaintiff their costs in this action laid out and expended, taxed at $........, to which ruling the plaintiff at the time objects and excepts."

This brings the court to a consideration of the appellees' motion to dismiss the appeal. The appellees point out that appellant did not file a motion for a new trial, but assigned as error on appeal that "the court erred in sustaining each of the appellees' objections to the appellant's complaint" numbers 1 to 28, inclusive. Appellees claim that a final judgment was not entered. It is clear that the court entered a final judgment from which an appeal may be prosecuted in the same manner as in a case where a demurrer is sustained

to a complaint and the plaintiff refused to plead over. The objections filed to the complaint were treated as a demurrer. In such case the plaintiff always possessed the right to appeal directly from the ruling on the demurrer to the complaint, and without filing a motion for a new trial, which is not required, nor is it necessary or proper. Appellees cite and rely upon *Westport Stone Co. v. Thomas, supra,* as an authority to sustain its proposition. The appeal in that case was dismissed because the judgment of the lower court merely sustained the objections without entering a final judgment as in the case at bar.

At the time objections to the complaint were submitted to the court, the parties stipulated certain facts alleged in both the complaint and objections. The stipulation did not go to the merits of the suit to be heard before a court or jury in the event the objections should be overruled. Appellee argues that because of the stipulation the cause was heard upon its merits and, therefore, a motion for a new trial was necessary before an appeal could be taken. At the time of the ruling of the court viewers had not been appointed to assess the amount of damages. Nothing was stipulated upon that question. Besides, it was stipulated expressly that such matters, together with the right to object to the competency and relevancy of the facts stipulated, were reserved for final hearing. Had the objections been overruled by the court, they would have served as an answer upon final hearing.

The specifications will be considered in groups rather than singly. Specifications 1, 2, and 3 pertain solely to the question of the election held in the city to determine the advisability of acquiring the property. It is claimed that no legal special election to purchase the electric public utility was held, for the reason that the county board of election commissioners did not act therein, but a so-

called board of election commissioners, appointed by the common council of the city of Lebanon, purported to conduct the special election; that no statute provides for such method of holding a special election; that the ballots used were not in the form prescribed by statute; that the town of Ulen comprises territory adjacent to the city of Lebanon and is served with electric energy by appellee, and will be affected by the acquisition of the electric distribution plant by the city of Lebanon.

Section 10 of Chapter 190, Acts 1933, Sec. 54-602 Burns 1933, §14021 Baldwin's Ind. St. 1934, provides that no municipality shall hereafter construct and operate, or acquire and operate, any utility distribution system until and unless the voters of such municipality have voted to do so in the manner prescribed by Section 18 of that Act (Sec. 54-612 Burns 1933, §14029 Baldwin's 1934). This section provides that when 5 per cent or more of the voters, as shown by the total vote cast for city clerk at the last preceding municipal election, shall file a written petition with the common council requesting the purchase, condemnation, or acquisition of the public utility then operating in the municipality, the council shall submit to the voters thereof, at a special election to be held at the *earliest possible date,* the question of the acquisition of such property. It is provided that such election shall be governed by the laws of the state governing the holding of municipal elections. No special wording or form of the submission of the proposal to purchase or condemn is prescribed by statute.

The complaint alleges facts sufficient to show that the city of Lebanon, through its common council, took action upon all vital jurisdictional questions and gave the proper notices; that the legal voters of the appellant were given an opportunity to express their approval or disapproval of the acquisition of the property in question. In view of the fact that the election was

called for a specific purpose, under a special statute which does not prescribe the details and manner of holding such election, it does not lie within the power of the appellee to object upon the ground that the county election commissioners did not conduct the election. The election pertained solely to a matter within the city of Lebanon and adjacent territory as fixed by statute. In addition, the appellee does not charge that any fraud or corruption was committed, or that the legal voters of the city were deprived of their free and untrammeled right to express their opinion upon the subject for which the election was called. These specifications were insufficient.

Specifications 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, and 18 pertain to the subject of condemnation of the property. They charge that the statute does not contain any adequate or appropriate provision for condemning property of the kind owned by appellee; that the statute provides only for the condemnation of real estate; that neither the Eminent Domain Act of 1905 nor Chapter 190, Acts 1933, provides for a full and accurate valuation of the property, by appraisement or otherwise, between the date of the appraisal of the property and the date final payment is made; that during such period appellee is under obligation to maintain the property so as to render continuous and uninterrupted service to customers and patrons; that appellee holds contracts with customers using electric energy which are valuable, and is under contract with the State of Indiana to maintain continuous service to customers and patrons; that its indeterminate permit is of great value and no provision is made for its appraisal and for compensation for that valuable item; that by reason of the fact that its property is attempted to be taken without paying full and fair compensation therefor, the proceeding is in violation of Sections 21 and 23 of Article 1 of the Constitution of Indiana, and of the Fourteenth Amendment

and Section 10 of Article 1 of the Constitution of the United States, which provide that no man's property shall be taken without just compensation, and that no law shall be enacted by the state affecting the obligations of contracts.

Upon the general question of the authority of a municipality to exercise the right of eminent domain, it may be said that the General Assembly of the State of Indiana, by Chapter 48, p. 59, and Chapter 129, p. 219, Acts 1905, granted that right and authority.

The Shively-Spencer Utility Act of 1913, Chapter 76, p. 167, expressly authorized cities to acquire privately owned utilities by condemnation, where purchase was impossible either because the owner would not sell or the price could not be agreed upon. The Shively-Spencer Act, particularly Sections 103 and 105, authorized a municipality to condemn the public utility through the Public Service Commission. The Legislature in 1933, by Section 18 (b) of Chapter 190, changed the procedure and authorized the municipality to condemn the property under the Eminent Domain Act of 1905. See Secs. 54-607, 54-609, and 54-612 (b) Burns' Ind. St. 1933, §§14024, 14026, 14029 Baldwin's Ind. St. 1934. A study of these statutes discloses that the 1933 Act did not create in the municipality a new or additional authority to condemn a privately owned public utility. It changed the method of acquisition by taking the proceeding from the Public Service Commission and placing it under the Eminent Domain Act, where the questions involved can be passed upon by a court instead of a commission.

According to the allegations of the complaint the appellant has proceeded in the manner prescribed by statute. The appellee attacks the procedure upon the ground that its property is being taken without just compensation and without due process of law.

Whether that question is properly before the court at this stage of the proceeding may be doubted. It cannot be determined at this time whether the property is to be taken without just compensation and without due process of law, for the reason that no appraisers have been appointed to make the appraisal. The appraisal, when made, may be entirely satisfactory to appellee. If not, it has its remedy by filing its action in the circuit court and finally by appealing to this court under the statute, Sec. 8, Chap. 48, Acts 1905 (Sec. 3-1707 Burns 1933, §14068 Baldwin's 1934), which provides that:

> "The cause shall further proceed to issue, trial and judgment as in civil actions; the court may make such further orders, and render such finding and judgment as may seem just. Such judgment as to benefits or damages shall be appealable by either party as in civil actions to the Appellate or Supreme Court."

Therefore, if the time arrives when the appellant may not feel satisfied with the valuation, it can appeal to the court. This court can indulge in no presumption that the amount fixed by the appraisers or the trial court will be too low. The trial court is given full authority by the statute to hear evidence and to grant full, true, and just compensation for all property taken. The taking includes not only the real estate, but "other interest therein or other property or right." Sec. 3-1701 Burns 1933, §14061 Baldwin's 1934, and Chapter 190, Acts 1933. It is evident that the objections to the complaint upon the valuation procedure are not well taken at this time. There is no present injury to the appellee. The question of due process and of just compensation is not now before the court. As stated in *Utah Power & Light Co.* v. *Pfost* (1932), 286 U. S. 165, 186, 52 S. Ct. 548, 76 L. Ed. 1038, 1049:

> " 'A litigant can be heard to question a statute's validity only when and so far as it is being or is about to be applied to his disadvantage.' "

The statute, Sec. 18(b), Chap. 190, Acts 1933, Sec. 54-612 (b) Burns 1933, §14029 Baldwin's 1934, provides that:

> "Said municipality for the purpose of acquiring the property of any such public utility as hereinbefore provided is granted the power of eminent domain for such purpose and in the acquisition of such property shall proceed as now provided by law for the taking of property under the power of eminent domain."

The Legislature expressly declared that the municipality should follow and be guided by the Eminent Domain Act of 1905. When the question of the appropriation is brought before the trial court on appeal from the assessment made by the appraisers, the cause shall "proceed to issue, trial and judgment as in civil actions." (Sec. 3-1707 Burns 1933, §14068 Baldwin's 1934.) The statute provides that the court may make such further orders and render such findings and judgments as may seem just. The evident purpose of this provision is to enable the court to meet any contingency or situation that might arise and to provide for full and just compensation to the owner of all the property, including extensions, additions, capital expenditures, etc., made after the proceedings are commenced. It is the evident purpose of the statute, by the provisions cited, to vest the trial court, on appeal, with full power and authority to adjust the compensation to be paid to the owner in a manner to satisfy conditions arising subsequent to the appraisement, otherwise there would be no occasion for any "further orders" by the court.

The 1933 Act refers to the 1905 Act for the procedure to be followed by the municipality. On the subject of reference see *Advisory Board, etc.*, v. *State ex rel.* (1908), 170 Ind. 439, 85 N. E. 18, beginning at page 450, where it is stated that it is generally held that if an act is complete in itself, it may adopt rules of construction

and modes of procedure for carrying out its provisions by reference to other statutes, and by so providing, as does the statute now before the court, it does not violate Section 21, Article 4, of the State Constitution.

The 1933 Act has the effect to broaden the Eminent Domain Act of 1905 and provides an orderly method of condemnation where a court of law has a final voice as to what is just compensation for the property taken. It is evident that the Legislature considered that the method adopted in 1933 was fair and just, and that the court would consider evidence to determine the question of just compensation. The court is authorized to require additional investments and expenditures to be included in the compensation. Full and ample provisions are made to enable the appellee to present, and to be heard upon, all proper questions. Notice is required and every facility furnished to appellee to be protected in its property rights. No reason appears to hold that the due process clause of the Fourteenth Amendment of the Federal Constitution is violated, or that the law transgresses any state or Federal constitutional provision.

The fact that appellee held an indeterminate permit is of no aid. Sec. 54-606 Burns 1933, §14023 Baldwin's 1934, provides that such acceptance is subject to the right of the municipality to take the property at a value to be established by judgment of court.

By Specification 19 of the objections, the appellee presents a contract between the city of Lebanon and one Pierce for the sale of bonds to pay for the property to be taken. This fact can be of no concern to appellee. Nor is it interested at present in the fact that no funds have been appropriated, or that funds are not available to pay for the property when taken. It knows that the appellant must have available funds to pay for the property within one year. The appellee evidently understands from the complaint that the

appellant is endeavoring to condemn and acquire all of its property within the city of Lebanon and the adjacent territory described, and this means personal property as well as real estate. Ample provision is made by the statute for a just compensation for the property taken. The complaint meets the requirements of the statute. The specifications contained in the objection, in the main, go to questions appearing upon the face of the complaint and should not have been sustained by the trial court.

The specifications which do not attack the sufficiency of the complaint are of no consequence at this time.

The motion of the appellees to dismiss the appeal is overruled and the judgment of the lower court is reversed with directions to overrule the objections filed by the appellees to the appellant's complaint. The trial court is directed to appoint appraisers and to proceed as provided by statute.