## PUBLIC SERVICE COMMISSION OF INDIANA ET AL. *v.* CITY OF LEBANON

[No. 27,484.   Filed May 19, 1941.   Rehearing denied October 16, 1941.]

64

*Evans & Hebel,* and *Owen S. Boling,* all of Indianapolis, and *Parr, Parr & Parr,* and *Rogers & Smith,* all of Lebanon, for appellants.

*Thomas O. Beck, Adney & Adney,* and *Scifres & Hollingsworth,* all of Lebanon, for appellee.

FANSLER, J.—This is an appeal from a final judgment in the case involved in the appeals in *City of Lebanon* v. *Public Service Company of Indiana et al.* (1938), 214 Ind. 295, 14 N. E. (2d) 719, and *Public Service Company of Indiana et al.* v. *City of Lebanon* (1939),

215 Ind. 400, 19 N. E. (2d) 944. The action by the City of Lebanon seeks to condemn the public utility property of the Public Service Company of Indiana, and it will be called the appellant. Issues were formed upon the report of the appraisers. There was a trial by jury, and a verdict assessing appellant's damages at $210,000.

The only questions involved are: (1) Was it error to exclude tendered evidence of the value of the franchise under which appellant operated as a public utility distinct from the value of the business and property from a physical standpoint and from its going concern value? (2) Was the appellant entitled to damages which it claimed resulted from the severance of the local utility unit from its other utility property?

The appellant has been operating its Lebanon property under an indeterminate permit issued by the Public Service Commission in 1917. Prior to that time it had operated under a franchise from the City of Lebanon. The franchise was surrendered and an indeterminate permit accepted in lieu thereof. Under the act of 1913 (Acts 1913, ch. 76, § 1, p. 167), the indeterminate permit continued "until such time as the municipality shall exercise its option to purchase, as provided in this act, or until it shall be otherwise terminated according to law." The act (§ 102) also provides that by accepting the permit the utility company shall be deemed to consent to the future purchase of its property by the municipality in which the major part of it is situate, at the value and under the terms and conditions determined by the Public Service Commission, and shall be deemed to have waived the right to require that the necessity of the taking shall be established by a jury, and to have waived all other

remedies and rights relative to condemnation, except such rights as are provided for in the act.

In 1933 the Public Utilities Law (Acts 1933, ch. 190, p. 928) was amended to the extent that if the city desires to purchase, the value of the property is to be determined under the Eminent Domain Act of 1905 (Acts 1905, ch. 48, p. 59) instead of by the Public Service Commission, and the determination of public convenience and necessity for the taking is delegated to the municipal council.

It is urgently contended by appellant that these changes destroy a vested right under its indeterminate permit contract with the state. It is conceded that the city still has the right to take its property under the power of eminent domain, but that in taking it, it must pay the value of the indeterminate permit contract itself. In other words, the contention is that the indeterminate permit continues in force until the city exercises its option to purchase and has the value of the property determined by the Public Service Commission, and that if the value is determined in any other manner the indeterminate permit is not terminated but must be purchased.

It is also contended that under section 104 of the act of 1913 (Acts 1913, *supra*) it is required that the necessity for taking the property shall be adjudicated by a court in an action in which the utility company is a party. This section, by its terms, affects only properties operating under a permit or franchise at the time the act takes effect, and not those operating under an indeterminate permit provided for in the act. It is also contended that because of the provision in section 102 of the act, that the holder of the permit, by accepting it, "shall be deemed to have waived the right of requiring the necessity of such taking to be

established by the verdict of a jury," an agreement that the question of necessity shall be determined by a court without the intervention of a jury is implied, and that this right is a substantial consideration for the contract.

The questions thus presented were decided contrary to appellant's contention in *Southern Indiana Gas & Electric Co.* v. *City of Boonville* (1939), 215 Ind. 552, 20 N. E. (2d) 648. As supporting the views there expressed, see also, *Galveston Wharf Co. et al.* v. *City of Galveston et al.* (1923), 260 U. S. 473, 43 S. Ct. 168, 67 L. Ed. 355, and *Contributors to Pennsylvania Hospital* v. *City of Philadelphia et al.* (1917), 245 U. S. 20, 38 S. Ct. 35, 62 L. Ed. 124. The indeterminate permit provides that it shall terminate when the city exercises its option to purchase the property. It is pointed out in the Boonville case that the words "purchase" and "condemn" have been construed as relating to the same character of transaction, and it must be concluded that the appellant's contract terminated when the city's right to purchase was exercised, regardless of the procedure for fixing the purchase price.

In *North Laramie Land Co.* v. *Hoffman et al.* (1925), 268 U. S. 276, 284, 45 S. Ct. 491, 495, 69 L. Ed. 953, 958, it is said upon authority cited that: " . . . the necessity and expediency of the taking of property for public use 'are legislative questions, no matter who may be charged with their decision, and a hearing thereon is not essential to due process. . . .' " The act of 1913, *supra*, was modeled after a Wisconsin act adopted in 1907, and much of the language of the Wisconsin act is copied into ours. Article XI, § 2, of the Constitution of Wisconsin requires that the necessity of the taking of property by eminent domain by a municipal corporation shall be passed upon by a jury. The Wisconsin act contains provisions identical

with those in sections 104 and 102 of our act of 1913 above referred to. Obviously they were inserted in the Wisconsin act because of the provision of the Constitution of that state. There is no such provision in the Constitution of Indiana. On the contrary, our Constitution prohibits the delegation of legislative authority to the courts, and juries function as part of the judicial system. A more careful consideration of the differences in the constitutional law of the two states would have indicated the desirability of omitting the provision of the Wisconsin act in question from our statute. By waiving the right of requiring the necessity of the taking of the property by the city to be established by the verdict of a jury, the utility company waived nothing, since it had no such right under the law of this State or by the terms of the act. Neither did it have a right to have that question determined by a court; and the disclaimer of a right which it did not have cannot be constructed into an implied agreement that it should have a right entirely inconsistent with condemnation practice in this state and contrary to our constitutional policies relating to the separation of governmental authority.

The indeterminate permit involved authorized the operation of a utility plant serving Lebanon and immediately adjacent territory. The property was self-contained and operated its own generating unit. Afterward use of the generating unit in Lebanon was abandoned, and energy for the plant was purchased from another company operating a generating plant in an adjoining county. In order to deliver power, this independent company constructed a power line to the City of Lebanon and beyond to serve other customers, and constructed a substation in the City of Lebanon. This company was selling the energy at

wholesale, and was not operating under appellant's indeterminate permit. After this action seeking to condemn the property of the appellant operated under its indeterminate permit was begun, the appellant purchased the power transmission line and substation from the company from which it had been procuring power and which had been used for the wholesale distribution of power. The appellant asserts that it is entitled to damages which it claims resulted from the severance of its local utility unit from the wholesale distribution system which it acquired by purchase after the condemnation proceeding was begun.

By accepting the indeterminate permit, the appellant agreed that the city might purchase the utility property operated under the permit. This the city is seeking to do. It might have continued generating its own energy and the city would have been bound to purchase the generating plant. It chose, however, to purchase energy at wholesale, delivered to it in Lebanon by a third party, over wires and through a substation owned and operated by a third party. If this wholesale distribution system and substation were still owned by the third party it would not be seriously contended that the third party is entitled to damages by reason of the severance of the local utility from the wholesale distribution plant. The purchase of the wholesale distribution plant by the appellant cannot change the situation. The indeterminate permit contract contemplates the purchase by the city of the utility property operated under the permit, and the wholesale distribution system and substation cannot reasonably be said to be a part of the local plant.

The court below correctly excluded evidence of the depreciated value of the substation and wholesale distribution system.

The appellant also complains of the overruling of a challenge of a juror for cause upon the ground that he is a resident of Boone County, in which the City of Lebanon is located, and as such a potential future customer of the city, and hence interested in the cause. The juror lived beyond the territory served by the utility. This was not error. *Public Service Company of Indiana et al.* v. *City of Lebanon,. supra.*

Judgment affirmed.

NOTE.—Reported in 34 N. E. (2d) 20.

## ON PETITION FOR REHEARING.

FANSLER, C. J.—In addition to the facts set out in the opinion, it appears that in 1931 the appellant purchased a transmission line from the Receiver of the Terre Haute, Indianapolis and Eastern Traction Company and reconstructed the line to serve as a power transmission line, which it connected with its generating plant in another county and with the substation owned and operated by the Northern Indiana Power Company in the City of Lebanon, and that thereafter power for the City of Lebanon was furnished over this line, and the transmission line of the Northern Indiana Power Company was used only as a stand-by source of energy. Afterward the appellant purchased the substation. The appellant suggests that it may have to remove its substation from the City of Lebanon, since it no longer has a franchise to operate a utility in that city. But the substation was built within the limits of the city by the Northern Indiana Power Company, and was purchased by the appellant after the proceeding to purchase its utility property was begun. By building the substation within the

city limits without a franchise, the Northern Indiana Power Company took the risk that it might be required to remove the property. It was purchased by the appellant after these proceedings were begun, subject to that risk, and no reason can be seen why the city should be required to assume the burden of the risk by compensating the appellant in an amount equal to the cost of removing the station, even though it had been established that the station must be removed.

It cannot be seen that the additional facts change the situation with respect to severance damages. The franchise was to furnish electricity at retail to the local community. The appellant company was engaged in business elsewhere under franchises to furnish electricity to other local communities, and it was also engaged in the wholesale business of manufacturing and furnishing current at wholesale to local distribution plants which it owned and to plants owned by others. The power line from the appellant's generating plant serves other communities and other distribution systems, some of which, as the facts are understood, are served through the substation in the City of Lebanon. It is as though one private individual had franchises to conduct retail businesses in several cities, with a provision in the franchise that the local communities may purchase that retail business, and the same private individual was engaged in the manufacture of the commodity dealt in by the retail businesses under the franchises and furnished that commodity at wholesale to his own retail businesses and to other retail establishments operated in other cities. The manufacturing and wholesaling must of necessity be considered as a separate and distinct enterprise as though it were operated by a separate and distinct person.

Our Public Service Commission law was taken from Wisconsin. The Supreme Court of Wisconsin has repeatedly held that the local distribution plant must be treated as a unit, and that the statute so contemplates; that the agreement that the local community may purchase the property used and useful, operated under the franchise in the local community, does not contemplate that the community must purchase a part of a wholesale manufacturing and distribution system serving many communities, and that the local community may not be charged with the diminution in value of the generating and wholesale distribution plants occasioned by the loss of the local community as a customer. See *Wisconsin Power & Light Co.* v. *Public Service Commission* (1935), 219 Wis. 104, 261 N. W. 711, and *Wisconsin Power & Light Co.* v. *Public Service Commission et al.* (1939), 232 Wis. 59, 286 N. W. 588. We cannot see that the fact that the power is generated and distributed at wholesale by the owner of the local franchise rather than by a stranger in any way changes the situation. A stranger who constructs generating and wholesale distribution plants to serve local retail distribution plants operated under local franchises does so at his own risk. If the municipality should purchase the local plant it would be free to continue procuring current from the same wholesaler or to look elsewhere for its supply, and in the latter event the independent wholesaler could claim no compensation from the local municipality because of his loss of a customer or the diminution in value of his property because of the loss of income. Reference is made in the Wisconsin cases cited to situations in which the severance of the local distribution plant from a large system has required a reconstruction or rearrangement of leads or feeder

lines or other equipment used as part of the local plant and also as part of the general distribution system, and it is intimated that the expense of physical severance and rearrangement is an item that may be taken into consideration, but there is no such situation apparent here. So far as the record discloses, the physical severance may be accomplished by merely disconnecting the wires at the substation (if there is to be a physical severance, and if the municipality does not continue to purchase its current at wholesale from the appellant). The rule applicable to condemnation of property under the power of eminent domain, in which the value of the property and damage to the remaining property from which it is severed must be paid, does not apply, since, under the statute and the agreement entered into by the appellant when it ,accepted the indeterminate permit, the local utility property is treated as a unit which may be purchased as a unit and not as a part of some larger unit. The contention that the eminent domain rule applies was made in Wisconsin, but in a well-reasoned opinion in one of the cases above referred to the contention was denied.

Petition for rehearing denied.

NOTE.—Reported in 36 N. E. (2d) 852.