INDIANA & MICHIGAN ELECTRIC COMPANY *v.* WHITLEY COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION.

[No. 3-573A50. Filed June 19, 1974. Rehearing denied October 21, 1974. Transfer denied April 1, 1975.]

*Milford M. Miller, Edward L. Murphy, Jr., C. Erik Chickedantz, Livingston, Dildine, Haynie & Yoder,* of Fort Wayne, for appellant.

*Bloom, Bloom & Fleck,* of Columbia City, *Parr, Richey, Obremskey, Pedersen & Morton,* of Lebanon, for appellee.

GARRARD, J.—This case arises under Section 18A of the Rural Electric Membership Corporation Act,[1] which provides for the purchase or condemnation of electric utility property upon annexation of additional territory to a city or town.

In 1967 the Town of Huntertown granted to the appellant (I & M) a franchise to provide electric utility service within the town. On June 12, 1969, the town annexed approximately 69 acres of additional land. At the time of the annexation the 69 acres were within the franchise area of the appellee (REMC). However, at the time of annexation, there were no persons residing within the newly-annexed area and at that time REMC had no tangible or physical property located within the area. After annexation, a residential development was commenced and I & M began constructing facilities into and in the area to supply it with electric service. Shortly thereafter the REMC brought this suit to enjoin I & M's

---

1. IC 1971, 8-1-13-19 (Burns Code Ed.).

activity. I & M filed a motion for summary judgment which was granted. This summary judgment was later corrected to specify the reasons therefor and REMC's subsequent motion to correct errors was granted and "a new trial" was ordered. Finally, the court, apparently pursuant to Indiana Rules of Procedure, Trial Rule 56(B), granted summary judgment in favor of the REMC. The overruling of I & M's timely filed motion to correct errors addressed to the grant of the latter judgment prompts the present appeal.

As we conclude that the judgment must be reversed, our discussion will be limited to the asserted errors necessary to our decision.

Section 18A of the REMC Act provides:

"Whenever a municipality in which a public utility (including a corporation organized, or admitted to do business, under this act [8-1-13-1—8-1-13-27]) is rendering electric utility service under a franchise, license or indeterminate permit or in which a municipally-owned utility is rendering electric utility service, as the case may be (such public or municipal utility being hereinafter called the 'franchised utility'), annexes additional territory and such annexed territory includes any territory in which the franchised utility was not authorized to render electric utility service immediately prior to such annexation but in which some other public utility (including a corporation organized, or admitted to do business, under this act) or municipally-owned utility (such public or municipally owned utility being hereinafter called the 'other utility') was lawfully rendering electric utility service at such time, then the franchised utility and the other utility shall promptly negotiate for the purchase by the franchised utility of the property owned by the other utility within the annexed territory and used and useful by the other utility in or in connection with the rendering of electric utility service therein. In the event that such property has not been purchased by the franchised utility within 90 days after such annexation takes place, then the franchised utility may bring an action in the circuit or superior court of the county where such municipality (or the major part thereof in area) is located against the other utility, as defendant, for the condemnation of such property of the other utility. Until and unless such purchase or condemnation is effected, the other utility shall have authority to operate within the

portion of the annexed territory in which it was lawfully rendering electric utility service immediately prior to such annexation. [Acts 1935, ch. 175, § 18A, as added by Acts 1953, ch. 48, § 2, p. 153.]" IC 1971, 8-1-13-19 (Burns Code Ed.).

I & M first contends that injunctive relief is inappropriate because REMC has an adequate remedy at law since it could bring an action for inverse condemnation pursuant to IC 1971, 32-11-1-12 (Burns Code Ed.).

Such a remedy is, however, not adequate in terms of defeating the right to equitable relief unless it is as complete, practical, efficient and adequate as an action in equity. *Meyer* v. *Town of Boonville* (1904), 162 Ind. 165, 70 N.E. 146; *Fisher* v. *Carey* (1918), 67 Ind. App. 438, 119 N.E. 376.

In considering the adequacy of the suggested legal remedy, we note that the purpose of public utility statutes, including § 18A, is to facilitate service to the public.[2]

We further note that § 18A does not mandate the "franchised utility" to acquire and serve the newly annexed territory, but instead permits the "other utility" to continue serving the area "until *and unless*" a purchase or condemnation is effected. In addition, our cases have already decided that where the other utility has a franchise for the area and is ready, willing and able to serve, the actual provision of service to customers is not essential to the continuance of its service right. *City of Greenfield* v. *Hancock Co. REMC* (1971), 256 Ind. 15, 266 N.E.2d 799; *Morgan Co. REMC* v. *Public Service Co. of Ind.* (1970), 253 Ind. 541, 255 N.E. 2d 822.

Thus, a proceeding for injunction where the franchised utility has neither purchased nor commenced eminent domain proceedings might provide an early (if perhaps interim) determination of service rights which would be beneficial to the public interest.

2. City of Greenfield v. Hancock Co. REMC, infra; Morgan Co. REMC v. Public Service Co. of Ind., infra.

In addition, Art. 1, § 21 of the Constitution of Indiana provides that, except in the case of the State, property shall not be taken by law "without such compensation first assessed and tendered." To limit the REMC to proceedings in inverse condemnation would deprive it of this constitutional right. *Sidener* v. *Norristown, H & St. L Turnpike Co.* (1864), 23 Ind. 623.

I & M next asserts that the statute entitles it to the territory automatically upon annexation; that to perfect the entitlement all it must acquire is "the property owned by the other utility *within* the annexed territory and used and useful by the other utility in or in connection with the rendering of electric utility service therein"; that since REMC had no property located within the annexed territory there is nothing for I & M to condemn in order to perfect its right to serve; and that therefore there is no basis for injunctive relief. In other words, it is I & M's position that where no property of the other utility is located within the territory at the time of annexation it would be a meaningless gesture to require it to file a condemnation suit which would result in a zero award on the basis that no property has been taken.

We agree that if REMC has no compensable interest, then I & M's right to serve was perfected upon the annexation and no basis for injunction existed.

A plain reading of § 18A with its single subject and conjunctive "and" clearly establishes that the property to be acquired is that which is *both* located within the annexed area and is used and useful in providing service therein.

However, while the section establishes what must be acquired, it does not purport to establish the basis for compensation. That is provided in the general eminent domain statute, which expressly applies to "any person, corporation or other body, having the right to exercise the power. . . ."[3] *City of Lebanon* v. *Public Service Co. of Ind.* (1938), 214 Ind. 295, 14 N.E.2d 719.

3. IC 1971, 32-11-1-1 (Burns Code Ed.).

Accordingly, a mere determination that REMC had no tangible property within the annexed area is not a sufficient basis to deny it relief. If it had a legally compensable interest, this would necessitate condemnation and potentially justify injunctive relief where no action to condemn was instituted.

We then must examine whether there is a proper basis for condemnation; i.e. whether in the absence of tangible property (or interests in real estate) within the annexed area, there is anything which REMC is entitled to be compensated for.

It has now been clearly established that since REMC's service rights are in the nature of an indeterminate permit, they are not *per se* compensable.

*Hendricks Co. REMC* v. *Public Service Co. of Ind.* (1971), 150 Ind. App. 503, 276 N.E.2d 852; *Public Service Co. of Ind.* v. *City of Lebanon* (1941), 219 Ind. 62, 34 N.E.2d 20, appeal dismissed 315 U.S. 786; *Southern Ind. Gas & Electric Co.* v. *Indiana Statewide Rural Electric Co-operative Inc.* (1968), 251 Ind. 459, 242 N.E.2d 361.

Also, it has been both traditionally and generally held that constitutional proscriptions such as ours[4] and that contained in the 14th amendment to the United States Constitution, do not require compensation for damage where no property is taken.[5] Indeed, the courts have felt compelled to apply this rule while criticizing its often harsh effect,[6] and in response a number of states have altered either their constitutional requirement[7] or the permissible[8] bases for recovery in the compensation elements of their eminent domain statutes to properly alter the otherwise uniform result.

---

4. Constitution of Indiana, Art. 1, § 21 ". . . No man's *property* shall be taken by law, without just compensation; . . ." (Emphasis added)

5. Brown v. State (1937), 211 Ind. 61, 5 N.E.2d 527; 2 Nichols On Eminent Domain (3rd Ed.) § 6.38 and cases cited therein.

6. See, e.g. Searle v. Lead (1897), 10 S.D. 312, 73 N.W. 101; Johnson v. Parkersburg (1880), 16 W. Va. 402, 37 A.R. 779.

7. The constitutional provision prohibits taking *or damaging* private property. See, e.g. Illinois Constitution, Art. 1, § 15.

8. Many of the cases applying such statutes are collected in 4A Nichols On Eminent Domain (3rd Ed.) § 14.1[1].

In *State* v. *Stabb* (1948), 226 Ind. 319, 79 N.E.2d 392, our courts held that the fourth clause of the general eminent domain act[9] contemplated such "consequential" damages as loss of profits, business and goodwill. This decision was subsequently distinguished[10] and criticized.[11] Finally, it was expressly overruled on this issue in *State* v. *Heslar* (1971), 257 Ind. 307, 274 N.E.2d 261, reh. den. 277 N.E.2d 796. Accordingly, such potential elements do not constitute a compensable interest which would require condemnation.[12]

Similarly, in *Public Service Co.* v. *City of Lebanon* (1941), 219 Ind. 62, 34 N.E.2d 20, our Supreme Court rejected the assertion that upon condemnation of a utility's local unit by the city being served, it was entitled to damages based upon the diminished value of its distribution system and a substation being used to convey energy to the city.[13]

There remains, however, yet another consideration. In *State* v. *Stefaniak* (1968), 250 Ind. 631, 238 N.E.2d 451, the state built a by-pass at an elevation above the previous street level, installed limited access fencing and deadended the street upon which plaintiffs lived on both sides but built a new access to it thus creating a cul-de-sac from the old street. This caused the property to become subject to the zoning burdens placed on non-conforming uses, disqualified it for

9. IC 1971, 32-11-1-6: "Such other damages, if any, as will result to any persons or corporation from the construction of the improvements in the manner proposed by the plaintiff."

10. State v. Ensley (1960), 240 Ind. 472, 164 N.E.2d 342; State v. Hastings (1965), 246 Ind. 475, 206 N.E.2d 874.

11. Elson v. City of Indianapolis (1965), 246 Ind. 337, 204 N.E.2d 857; Papp v. City of Hammond (1967), 248 Ind. 637, 230 N.E.2d 326; Steinmetz v. State (1967), 249 Ind. 184, 231 N.E.2d 232.

12. See, also, Wisconsin Power & Light Co. v. Public Service Commission (1935), 219 Wis. 104, 261 N.W. 711, 262 N.W. 257, where the Wisconsin courts rejected the theory that the measure of damages when a portion of a utility is condemned should be some proportionate part of the total value of the system since the potential of other partial acquisitions by other cities might ultimately render a great portion to the utility's plant and investment useless.

13. Although it appears in the opinion that ownership of the distribution system and substation were acquired by the utility after the condemnation proceeding was begun, the holding was not premised on those grounds.

mortgage loan financing, and caused a snow removal problem from drifts caused by the new grade and fencing.

The court affirmed judgment for the plaintiffs in their action for inverse condemnation despite the state's contention that the damages asserted were not compensable under Indiana law, stating:

> "A taking in eminent domain, by the modern and prevailing view, includes *substantial interference* with private property which impairs one's free use and enjoyment of the property or one's rights and interests in the property." 238 N.E.2d 451, 454. (Emphasis added)

The court relied, in part, on *Brown* v. *State* (1937), 211 Ind. 61, 5 N.E.2d 527, which had approved the following from the earlier case of *School Town of Andrews* v. *Heiney* (1912), 178 Ind. 1, 8, 98 N.E. 628, 630:

> ". . . it may be said that there is a taking when the act involves an actual interference with, or disturbance of, property rights, which are not merely consequential, or incidental injuries to property, or property rights, as distinguished from prohibition of use, or enjoyment, or destruction of interests in property."

Furthermore, the cited language from *Stefaniak* was subsequently approved in *Schuh* v. *State* (1968), 251 Ind. 403, 241 N.E.2d 362.

Accordingly, we apprehend that if the REMC has property outside of the annexed area the value and usefulness of which is substantially interfered with or damaged by the loss of the territory annexed, it is entitled to compensation for such damages.

In *Stefaniak,* the Supreme Court held that the question of whether or not there was such a compensable taking was for the jury's determination, with each case necessarily grounded upon its own set of facts.[14]

---

14. The language in *Schuh* which goes further than this, is simply an expansion limited to zoning violations caused by eminent domain proceedings. It was not the holding in *Stefaniak* and was not really necessary in *Schuh*, since the issue there was merely whether the state's objections to the landowner's inverse condemnation complaint were properly sustained by the trial court.

454

We are furthermore persuaded of the correctness of the *Stefaniak* logic. Whether the interference is "substantial" and thus sufficient to amount to a taking is properly a question for the trier of fact. That a franchised utility may on occasion desire to institute an action to assert that there is no such damage, does not alter the desirability of this approach, since in any event, on trial, the other utility has the burden of establishing its damages, which necessarily includes its entitlement to any damage.

In the record before us appear references to a substation and other electric distribution facilities owned by REMC in the area of the annexed territory. Whether or not the use and value of these have been substantially interfered with so as to entitle REMC to damages is a question of fact. Whether an appropriate case for summary judgment might be created by appropriate pleadings, discovery and affidavits, we are not called upon to decide. In the record before us there are disputed material questions of fact, and summary judgment was therefore inappropriate.

The summary judgment is therefore reversed and the case is remanded for further proceedings consistent herewith.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 312 N.E.2d 503.