PUBLIC SERVICE COMPANY OF INDIANA *v*. MORGAN COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION.

[No. 2-575A118. Filed March 21, 1977. Rehearing denied May 12, 1977. Transfer denied September 6, 1977.]

*Greg K. Kimberlin, Duejean C. Garrett,* of Plainfield, *Virgil L. Beeler, Michael J. Huston, Baker & Daniels,* of Indianapolis, for appellant.

*Cadick, Burns, Duck & Neighbours,* of Indianapolis, *Parr, Richey, Obremskey & Morton,* of Lebanon, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Public Service Company of Indiana, Inc. (PSCI) challenges a Thirty-six Thousand Five Hundred Twenty-two ($36,522.00) Dollar judgment awarded Morgan County Rural Electric Membership Corporation (REMC) as compensation for its property condemned by PSCI within an area annexed by the City of Martinsville.

We reverse.

## FACTS

The City of Martinsville annexed a twenty-seven (27) acre parcel of land served by REMC, and PSCI condemned that area pursuant to Indiana Code section 8-1-13-19:

Sec. 19. Whenever a municipality in which a public utility (including a corporation organized, or admitted to do business, under this act) is rendering electric utility service under a franchise, license or indeterminate permit or in which a municipally owned utility is rendering electric utility service, as the case may be (such public or municipal utility being hereinafter called the "franchised utility"), annexes additional territory and such annexed territory includes any territory in which the franchised utility was not authorized to render electric utility service immediately prior to such annexation but in which some other public utility (including a corporation organized, or admitted to do business, under this act) or municipally owned utility (such public or municipally owned utility being hereinafter called the "other utility") was lawfully rendering electric utility service at such time, *then the franchised utility and the other utility shall promptly negotiate for the purchase by the franchised utility of the property owned by the other utility within the annexed territory and used and useful by other utility in or in connection with the rendering of electric utility service therein.* In the event that such property has not been purchased by the franchised utility within 90 days after such annexation takes place, then the franchised utility may bring an action in the circuit or superior court of the county where such municipality (or the major part thereof in area) is located against the other utility, as de-

fendant, for the condemnation of such property of the other utility. Until and unless such purchase or condemnation is affected, the other utility shall have authority to operate within the portion of the annexed territory in which it was lawfully rendering electric utility service immediately prior to such annexation. (emphasis added) [hereinafter section 19][1]

All parties agree that the valuation date for computing damages was February 27, 1968.

It is likewise undisputed that the actual physical damage suffered by REMC was Two Thousand Eight Hundred Seventy-Six and 67/100 ($2,876.67) Dollars—Two Thousand Three Hundred Four and 25/100 ($2,304.25) Dollars representing reproduction costs (depreciated) of lines, poles, and transformers; Five Hundred Seventy-two and 42/100 ($572.-42) Dollars representing relocation costs of circuit breakers.

The disputed amount of damages is for the "going concern value" of REMC's property.

REMC's experts utilized a "discounted net cash flow" method of establishing this "going concern value." Through this method of computation, REMC's experts arrived at a damage figure in excess of Thirty Thousand ($30,000) Dollars.

PSCI's experts, on the other hand, computed this intangible "going concern value" by utilizing a percentage (ten [10%] percent) of the appraised value of the physical property lost. Thus, they determined Two Hundred Thirty ($230.00) Dollars should be awarded in addition to the actual physical loss for "going concern value."

The jury awarded REMC Thirty-six Thousand Five Hundred Twenty-two ($36,522.00) Dollars as compensation for its business in the condemned area.

---

1. In previous cases this section was commonly referred to as section 18a because of its placement in Ind. Ann. Stat. § 55-4418a (Burns).

## ISSUE

The sole issue is:

Is the jury's verdict erroneous because an excessive amount was awarded for "going concern value"?

PARTIES' CONTENTIONS—PSCI contents that under Indiana law all REMC's hold indeterminate franchises to serve specific areas, that the loss of these franchises through condemnation is non-compensable, but REMC in this case was, in effect, compensated for its lost franchise or right to serve a specific area.

REMC counters that it was not compensated for its lost franchise but rather for the "going concern value" of its business in the condemned area—this "going concern value" being computed under an acceptable theory of damages denominated as a "discounted net cash flow" method.

## DECISION

CONCLUSION—The jury's verdict was erroneous because an excessive amount was awarded for "going concern value."

PSCI was required by law to compensate REMC for "the property owned by [REMC] within the annexed territory and *used and useful* by [REMC] in or in connection with the rendering of electric service therein."[2] The exact measure of compensation intended to be embraced within the term "used and useful" has not been defined by Indiana courts, causing Judge Garrard to conclude in *Indiana and Michigan Electric Company* v. *Whitley County Rural Electric Membership Corporation*[3] that Indiana Code section 8-1-13-19 merely:

. . . establishes what must be acquired, *it does not purport to establish the basis for compensation.* That is provided in the general eminent domain statute, which ex-

2.  IND. CODE § 8-1-13-19 (emphasis added).
3.  (1974), 160 Ind. App. 446, 312 N.E.2d 503.

pressly applies to "any person, corporation or other body, having the right to exercise the power. . . ."[4]

However, there is recognition of "going concern value" as a valuation factor, at least by implication, in Indiana cases. *Public Serv. Comm. of Ind.* v. *City of Lebanon* (1941), 219 Ind. 62, 34 N.E.2d 20 (not error to exclude evidence of value of franchise distinct from value of business and property from a physical standpoint and from its going concern value) ; *Hendricks County Rural Elec. Mem. Corp.* v. *Public Serv. Co. of Ind.* (1971), 150 Ind. App. 503, 276 N.E.2d 852 (same point).

The parties accept "used and useful" as including the value of the tangible, physical assets used by REMC in the condemned area and the intangible loss represented by the "going concern value" of those assets. So, it is safe to conclude that "used and useful" includes REMC's tangible assets and the intangible asset of "going concern value."

But what constitutes "going concern value" is not so easy. No Indiana case has been found defining this slippery concept of public utility valuation. It may have one meaning in a rate case and another in a condemnation case; it requires the analyst to sever the unseverable:

This concept has plagued more than a few courts. . . .

\* \* \*

The difficulty in arriving at a satisfactory method of calculating going-concern value is rationalized as an attempt

---

4. *Id.* at 450, 312 N.E.2d at 506, *citing, City of Lebanon* v. *Public Serv. Co. of Ind.* (1938), 214 Ind. 295, 14 N.E.2d 719 (emphasis added). The valuation of public utility properties in eminent domain proceedings presents unique problems. The absence of sales of similar property is one difficulty. For another thing, the taking includes not just the property, but also the business, and the two are practically inseparable. The standard of compensation in utility condemnations is an extremely vague one, and although many tests are considered, none seems to be controlling. No rigid measures can be prescribed for the determination of "just compensation" under all circumstances and in all cases. No hard and fast rule can be laid down that will cover every case or fix in advance the limit of the matters which may be taken into consideration by the commissioners or jury in any particular case. 27 AM. JUR. 2D *Eminent Domain* § 339 (1966) (citation omitted).

to sever that which is unseverable; to segregate for separate analysis an element of value which is inextricably entwined with the value of the entire property.[5]

Most authorities seem to agree the concept contemplates something more than the bare physical structures lost:

[C]ompensation is not limited to the bare bones of the plant, its physical properties, such as its lands, its machinery, and its pipes or wires, nor to what it would cost to reproduce each of its physical features. The value, in fairness and justice, must include whatever is contributed by the fact that these items are connected and constitute a complete and operating plant. *The difference in value between a dead plant and a live one is represented by what is known as the "going value."*[6]

But how is this difference between a dead plant and a live plant calculated?

Numerous methods of making such a calculation have been devised[7] . . . none in Indiana.

Because of the peculiar posture of this case it is not necessary to adopt a rigid rule as to how "going concern value" should be calculated.

The amount and character of the award to REMC would appear to include value for losses not compensable under Indiana utilities and eminent domain law. The value of a lost franchise or right to service an area is clearly *not* compensable because of the indeterminate nature of the permit held by REMC. *Decatur County Rural Elec. Mem. Corp.* v. *Public Serv. Co. of Ind.* (1973), 261 Ind. 128, 301 N.E.2d 191 (complaint or offer to purchase need not include value for franchise rights as no right to compensation for any franchise due to waiver inherent in issuance of indeterminate permit);

5. Kashman, *Going-Concern Value of a Public Utility in Condemnation by a Municipality*, 6 ARIZ. L. REV. 92, 92-93 (1964) (citations omitted).

6. 4A NICHOLS' THE LAW OF EMINENT DOMAIN § 15.44, at 15-111, 112, 117 (rev. 3d ed. 1976) (citations omitted) (emphasis added).

7. 4A NICHOLS', *supra*, §§ 15.44 to 15.44[2]; 2 L. ORGEL, VALUATION UNDER THE LAW OF EMINENT DOMAIN § 216 (2d ed. 1953); *Kashman, supra;* Potter, *Going Value*, 24 MICH. L. REV. 232 (1926); 9 P.U.R. DIGEST 2d §§ 320-59 (1963).

*Public Serv. Comm. of Ind.* v. *City of Lebanon* (1941), 219 Ind. 62, 34 N.E.2d 20 (not error to exclude value of franchise distinct from physical and going concern value of property because utility operated under indeterminate permit).

The jury's award[8] can only be supported on the basis of evidence as to the "discounted net cash flow" method of valuating "going concern."

The "discounted net cash flow" method utilizes a thirty (30) to thirty-five (35) year *future* period of reference so as to give effect to many of the same damage dollars as would be used in compensating for a lost franchise with assets based on a useful life of thirty (30) to thirty-five (35) years.

In addition, such a method of valuation smacks of taking into account consequential damages such as lost profits or business which likewise are not compensable condemnation losses in Indiana.[9]

Also, the award seems to be based on impermissible speculation as to future development. Indiana permits no damages for intended uses of the property to arise in the future;[10] yet, analysis under the "discounted net cash flow" method centers on future development of the area after REMC's service ceased.

Finally, it taxes our credulity to accept as "going concern value" an amount ($33,645.33) over eleven and a half (11½) times the value of the physical property lost—nine (9) poles, one-third (⅓) mile of line, and lesser miscellaneous items totalling only Two Thousand

---

8. The jury's award of Thirty-Six Thousand Five Hundred Twenty-two ($36,522.00) Dollars, less actual physical damages of Two Thousand Eight Hundred Seventy-six and 67/100 ($2,876.67) Dollars, leaves Thirty-Three Thousand Six Hundred Forty-five and 33/100 ($33,645.33) Dollars as "going concern value."

9. *Indiana & Mich. Elec. Co.* v. *Whitley Co. Rural Elec. Mem. Corp.* (1974), 160 Ind. App. 446, 312 N.E.2d 503 (reviewing Indiana case law to the conclusion these special damages are not permissible under the fourth clause of the eminent domain appraisal statute. IND. CODE § 32-11-1-6.).

10. *State* v. *City of Terre Haute* (1968), 250 Ind. 613, 238 N.E.2d 459.

Eight Hundred Seventy-six and 67/100 ($2,876.67) Dollars. A rather small dog is wagged by a rather large tail.

Our conclusion that the damages awarded for "going concern value" are excessive is substantiated by the restrictive and narrow view of damages taken by the Indiana cases previously cited. For example, in *Decatur County Rural Electric Membership Corporation* v. *Public Service Company of Indiana,* *supra* at 135, 301 N.E.2d at 196, Justice Hunter stressed that a certificate of convenience and necessity

> constitutes no more than an indeterminate permit and is thus "subject to termination 'according to law.'"

By this language any future value is eliminated, only present value is contemplated. While severing the "going concern value," present or future, from the operating plant with which it is inextricably intertwined is at best an artificial act, the statutory words "used and useful" reasonably require some value be given beyond dead plant. But in view of the decided cases the value to be allowed should be restricted to present, not future, "going concern value."

One way out of the dilemma of determining the "going concern value," which should be included within the "used and useful" concept, without reference to future factors, is to arbitrarily allocate to "going concern value" a percentage of physical plant. There is "a long line of authority accepting the percent method of calculating going concern value . . . ten percent [of the lost physical property] [being] the most prevalent figure,"[11] Indiana[12] included.

Whatever the proper method of computing "going concern value" may be, our holding in this case only requires us to conclude that "used and useful" does include present "going concern value" and the jury's award was excessive because it was based on evidence of future "going concern value" arrived at by the "discounted net cash flow" method . . . a

---

11. *Kashman, supra* at 99, 100.
12. *Re City of Lawrenceburg,* P.U.R. 1927D, 269 (Ind. Pub. Serv. Comm.).

method contrary to the character of a certificate of convenience and necessity as an "indeterminate permit."

Therefore, the jury's award was excessive. The judgment is reversed and this case remanded for a new trial on the subject of damages.

White and Hoffman, JJ. (by designation), concur.

NOTE.—Reported at 360 N.E.2d 1022.